Argued and submitted November 30, 1990, reversed and remanded for new trial
June 19, 1991

## STATE OF OREGON,
### *Respondent,*

#### *v.*

## SCOTT FOSTER CHING,
### *Appellant.*

(10-88-08700; CA A62294)

813 P2d 1081

Ingrid A. MacFarlane, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender, Salem.

Diane S. Lefkow, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

## BUTTLER, P. J.

Defendant appeals his conviction for possession of a controlled substance, ORS 475.992, after trial to the court on stipulated facts following denial of his motion to suppress. He assigns error to the denial of that motion. We reverse.

On September 20, 1988, at about 2:00 p.m., Officer Wood and five other officers began executing a search warrant at a Eugene shop building. At about 4:45 p.m., the officers observed defendant drive his motorcycle on a public thoroughfare, enter the shop grounds and dismount. He walked toward Losey, the owner of the shop, who was sitting on a flatbed trailer surrounded by five officers in "RAID" jackets. As he did so, Wood intercepted[1] him and requested his identification. After defendant replied that he did not have any identification, he was asked to empty his pockets.

Defendant removed two white baggies from his left front pants pocket. Suspecting that they contained controlled substances, Wood gave defendant *Miranda* warnings, and defendant admitted that the baggies contained methamphetamine. An officer then ran a check on defendant and discovered an outstanding bench warrant for his arrest for failure to appear on a "no angling license" citation. It is conceded that no affidavit supported the bench warrant.

The trial court denied defendant's motion to suppress the baggies, concluding that, although defendant had not consented voluntarily to a search, when he said that he had no identification, Wood could reasonably have then assumed that he had no driver's license. At that point, Wood had probable cause to arrest defendant for failure to carry a driver's license. ORS 807.570; ORS 133.310(1)(j). It also held that the bench warrant was valid, despite the lack of a supporting affidavit, and that the officers could have arrested defendant pursuant to that warrant and could have searched him incidental to either arrest.

---

[1] The officer was authorized to prevent defendant from proceeding onto the premises. However, there is no basis whatsoever in the record to support the dissent's assertion that the officer believed that defendant was armed or that he was planning "to open fire on the officers or to attempt a delivery of narcotics." 107 Or App at 636.

The parties make numerous contentions concerning whether defendant was "stopped" by Wood, whether the later discovered arrest warrant was valid and, if so, whether its discovery vitiated any preceding illegality. However, the ultimate question is whether there was a search of defendant and, if so, whether he either consented to the search or was subject to a full search incident to a presumed arrest. We proceed to those questions.

■ The trial court found, first, that Wood "requested" defendant to empty his pockets and, second, that the "request" was in the nature of a command "that would be the equivalent of a search by the police as the defendant could reasonably assume that if he did not do so voluntarily, that he would be searched by the police." The finding that the circumstances were such that a reasonable person in defendant's position would believe that he was required to empty his pockets is supported by the evidence, and we are bound by it. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). That finding supports the court's conclusion that the command was in the nature of a search to which defendant did not voluntarily consent. Acquiescence to police authority does not constitute voluntary consent. *State v. Freund,* 102 Or App 647, 796 P2d 656 (1990).

■ Notwithstanding its conclusion that defendant was searched without his consent, the trial court ruled that Wood's search of defendant incident to an arrest permitted reaching into defendant's pockets. Wood had probable cause to arrest defendant for failure to carry a driver's license. Incidental to that arrest, he had authority to search for evidence of the crime for which defendant was arrested and to conduct a pat-down or limited search for weapons. *State v. Owens,* 302 Or 196, 729 P2d 524 (1986); *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982). There was no reason to search for evidence of the driving offense, *State v. Scheer,* 99 Or App 80, 781 P2d 859 (1989), so Wood was limited to a pat-down for weapons. If he had conducted a pat-down, the most that he would have felt, according to the evidence, were two soft bulges caused by the baggies. That would not have permitted him to reach into defendant's pocket to retrieve them. In *State v. Gressel,* 276 Or 333, 336, 554 P2d 1014 (1976), the court explained:

> "[Officer] Grimes then conducted a pat down search for weapons and found none. However, during the course of the frisk he patted bulges which he had noticed in two of defendant's jacket pockets and felt something soft. When he asked what was in the pockets, he was told, 'Nothing.' Grimes thereupon reached into one of the pockets and pulled out a bag of marijuana, at which point he placed defendant under arrest."

The court held that the officer had no authority, as part of a pat-down or frisk, to search further to ascertain the contents of the defendant's pockets. Neither did Wood in this case. The same result would obtain if the warrant[2] for the arrest of defendant for failure to appear for the angling violation is valid. No evidence of that offense could reasonably be expected to be found on defendant's person.

The trial court erred in concluding that Wood was authorized to reach into defendant's pockets as part of a search incident to arrest.

Reversed and remanded for a new trial.

**ROSSMAN, J.,** dissenting.

The majority ignores the central question of this case and, in so doing, unnecessarily creates law that will be detrimental to the safety of every police officer who executes a search warrant. Accordingly, I dissent.

The defendant in this case drove up on a motorcycle, dismounted and walked toward an individual named Losey, who was surrounded by approximately five police officers. The officers, wearing jackets marked "RAID," were obviously engaged in a criminal investigation. Defendant ignored them and continued to approach. Officer Wood, in an attempt to block defendant from making contact with Losey, intercepted him and asked for identification. Defendant replied that he had none. The trial court found that defendant was then "requested to empty his pockets." He complied.

---

[2] The state also argues that the search warrant authorized the search of defendant's pocket. That warrant, however, limited the search of persons to those "found to be in control of the premises." There is no evidence that defendant was in that category. *See State v. Ingram,* 104 Or App 389, 802 P2d 656, *rev allowed* 311 Or 266 (1991).

To hold that that scenario constituted a search is ludicrous. Defendant intruded in a situation that was volatile and needed to be completely controlled by the officers. As the Supreme Court said in *Michigan v. Summers,* 452 US 692, 702-03, 101 S Ct 2587, 69 L Ed 2d 340 (1981), when a warrant to search for narcotics is being executed, the "risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." The officers did not know who defendant was or what he was doing. He could have been planning to pass a weapon to Losey, to open fire on the officers or to attempt a delivery of narcotics. Wood simply asked defendant to show identification and to empty his pockets. Defendant voluntarily emptied his pockets. That was not a "search" incident to an arrest for failure to present or carry a driver's license. It was simply the least intrusive means of ensuring the safety of those assembled.

Defendant could see what was taking place. He intentionally injected himself into the middle of police activity and now seeks to rely on the argument that, in being kept from contacting Losey, his "liberty" was restrained, because he was "required to alter his course of conduct." That is utter nonsense. The officers had every right to keep defendant from reaching Losey. They were not on the offensive, seeking out and stopping defendant without a reasonable suspicion that he had committed a crime. They were acting defensively to secure the situation and to protect those present.[1] That was accomplished in a low-key manner that involved no violation of defendant's rights.

After finding that defendant had been "requested" to empty his pockets, the trial court determined that "defendant emptied his pockets in response to [the officer's] commands * * * and *under the law that would be the equivalent of a search* by the police as the defendant could reasonably assume that if he did not do so voluntarily that he would be

_____

[1] Although the state does not present this argument, it appears to me that defendant's interference violated, or was an attempt to violate, ORS 162.235(1), which provides, in part:

"A person commits the crime of obstructing governmental or judicial administration if the person intentionally obstructs, impairs or hinders the administration of law or other governmental or judicial function by means of * * * physical * * * interference * * *."

searched by the police." (Emphasis supplied.) That statement is a *legal conclusion,* not a "finding." It was erroneous, and we are not bound by it. I can find, and the majority cites, no facts that support the conclusion that "a reasonable person in defendant's position would believe that he was *required* to empty his pockets * * *." 107 Or App at 634. (Emphasis supplied.) To the contrary, defendant exercised his free will in approaching the officers and then in choosing not to walk away from a scene where he was not allowed. He was not expressly or impliedly compelled, induced or threatened in order to make him comply with the officer's request. There is simply no basis to believe that a reasonable person in defendant's position would assume that he would be searched if he failed to empty his pockets.[2] Even if the majority feels compelled to characterize this situation as a "search," given the way the law in this area has developed, it creates a strange situation in which an officer with a legitimate concern for personal safety would be legally authorized to pat down an individual physically, yet could not lawfully ask that individual to empty his pockets of his own accord.

Given that we are dealing with an area of the law in which "reasonableness" is the hallmark, it seems to me that common sense should play a greater role in resolving the issue presented by this case. I would hold that there was no stop and no search and that defendant voluntarily consented to revealing the contents of his pockets during his brief conversation with Wood.

---

[2] The fact of the matter is that no reasonable person would have carried methamphetamine into a group of officers who were executing a narcotics search warrant.