Argued and submitted January 29, affirmed August 18, reconsideration denied
November 10, petition for review denied November 30, 1993 (318 Or 98)

# STATE OF OREGON,
*Respondent,*

*v.*

# HILARIO SOSA-ALVAREZ,
*Appellant.*

## (91C20546; CA A72085)

857 P2d 883

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Ann Michelle Feusse, Certified Law Student, Salem, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, Virginia L. Linder, Solicitor General, and Janet A. Metcalf, Assistant Attorney General, Salem.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

DEITS, P. J.

## DEITS, P. J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. He assigns error to the trial court's denial of his motion to suppress. We affirm.

■ Defendant was in a tavern where approximately 7 to 10 police officers were involved in a "controlled buy" of drugs. After an undercover officer obtained drugs from two of the patrons for $160, other officers, four in uniform, entered the tavern, arrested the sellers and took them to a patrol car. Most of the officers remained in the tavern and stood at different locations around the bar. They did not block the doors and had been instructed that anyone who wanted to leave could do so. In a prior incident at the same tavern, the police found "large quantities of cocaine and heroin, large quantities of cash and several handguns" thrown on the floor. Because of this recent incident, the officers were told to "keep their eyes open if anybody was trying to get rid of something."

The arresting officers did not find the $160 drug purchase money on either of the two sellers who had been arrested. They then requested and obtained consent from the tavern owner to search the premises. They also requested and obtained consent from a number of patrons, including defendant, to search for drugs, money and weapons. The police found cocaine in defendant's pocket and arrested him.

Defendant moved to suppress the evidence, arguing that, under Article I, section 9, of the Oregon Constitution and the Fourth Amendment, his consent was not voluntary, given the coerciveness of the atmosphere created by the police presence and activities. The trial court denied the motion, finding that

> "defendant consented to the search of his person in response to the request for consent to search. I find that the defendant understood that he was being asked to voluntarily consent to a search of his person and that he could refuse such consent, was free to remain or leave or go about his business as he chose.

> "I also find that a person in the position of defendant would have so understood, in respect to his freedom of choice to either consent to or not to consent to the requested search and to proceed as he might wish, either to remain on the premises or leave.

"'* * * * *

"I find that the defendant's free will was not overcome by any coercive action express or implied by the officers and that he knowingly, intelligently and voluntarily gave consent to search of his person for drugs, currency, and weapons."

On appeal, defendant alleges that every person in the bar consented to be searched and that that fact demonstrates that the police successfully created an atmosphere of coercion and domination. He concludes that, therefore, his consent to search could not have been made voluntarily.

A trial court's findings of historical facts regarding the voluntariness of a defendant's consent to search are binding on this court if there is supporting evidence in the record. If there are insufficient factual findings and conflicts in the record, we will presume facts consistent with the trial court's ultimate conclusion. *State v. Parker*, 317 Or 225, 229-30, 855 P2d 636 (1993). However, we review for errors of law a trial court's ultimate conclusion on whether consent was voluntary. *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991).

Here, after arresting the two people who sold the drugs to the undercover officer, the police took them out to the patrol car. Of the other officers who entered after the arrest, only four were in uniform and none of them blocked any exits. Although activity slowed when the police entered, the patrons continued to play pool and engage in their normal activities and no one was physically restrained or prevented from leaving. Also, the request to search defendant was polite, "Sir, can we search you for drugs, for money and for weapons," and he was not threatened in any way.

Voluntariness depends on the totality of the circumstances, *State ex rel Juv. Dept. v. Fikes*, 116 Or App 618, 624, 842 P2d 807 (1992), and the state has the burden of proof by a preponderance of the evidence. ORS 133.693(4); *State v. Stevens, supra,* 311 Or at 137. We conclude that, under the totality of the circumstances of this case, the state met its burden of proving that defendant's consent to search was not a product of police coercion, but a product of defendant's free will. As we have explained, "[a]lthough there may be elements of coercion in every police-citizen encounter, not every

coercive factor inducing a consent to search is constitutionally impermissible." *State v. Jacobus*, 106 Or App 496, 500, 809 P2d 108 (1991), *rev den* 314 Or 176 (1992). Under these circumstances, even if all of the patrons consented to be searched, the evidence does not indicate undue coercion. Aside from the presence of officers, there is nothing in the facts of this case to indicate that the atmosphere in the tavern was antagonistic or oppressive, nor do the circumstances indicate that defendant's will was overborne. The trial court properly denied defendant's motion to suppress.

Defendant's remaining arguments do not require discussion.

Affirmed.