Argued and submitted October 16, 1995, affirmed May 22, petition for review denied September 24, 1996 (324 Or 229)

STATE OF OREGON,
*Respondent,*

*v.*

LEO ANTHONY LARSON,
*Appellant.*

(C 92-11-36638; CA A86163)

917 P2d 519

Marc Blackman argued the cause for appellant. With him on the brief was Ransom, Blackman & Weil.

David E. Leith, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals his convictions for driving under the influence of intoxicants (DUII), ORS 813.010, and criminally negligent homicide, ORS 163.145. Defendant assigns error to the trial court's denial of his motions to suppress. We affirm.

We recite the facts in the light most favorable to the state. *State v. Hayes*, 135 Or App 506, 508, 899 P2d 1198, *rev den* 322 Or 168 (1995). On the evening of October 1, 1992, defendant was driving a van in the rain. Defendant ran into two pedestrians, both of whom eventually died. Defendant remained at the scene of the accident. Officer Bell arrived by himself, in uniform and with his overhead lights flashing. He called for an ambulance and parked in a manner to protect the injured pedestrians, who were lying in the street. Traffic flow was heavy and, at some point, another officer arrived and helped conduct traffic.

After determining that defendant was the driver, Officer Bell approached defendant and asked to see his driver's license. Defendant complied. Upon further questioning, defendant described the accident. Before other officers arrived, Bell attended to other responsibilities and left defendant alone several times. An ambulance and fire services arrived.

About ten minutes after the ambulance left, Officer Powell arrived and met with Bell. Bell described to Powell the accident and identified defendant, who had been standing a few feet behind Bell and listening to their conversation for about three minutes. During that conversation, Powell smelled alcohol emanating from defendant and noticed that defendant was "dazed to the point of almost being stuporous" and was "weaving back and forth."

Powell asked defendant what had happened and defendant again described the accident. Although there is no traffic light where the accident occurred, defendant said that the light was green when he went through the intersection. Powell asked defendant if he had been drinking and defendant said "yes." When asked, defendant said that he had felt

the effects of alcohol earlier, but not at the moment. Powell said that he wanted to inspect defendant's van for damage. Powell and defendant walked to the van. As Powell walked around the van, he looked inside the driver's side and saw between the seats a "pint bottle brand name HRD Vodka." Powell asked defendant if he had been drinking from that bottle, and defendant said that he drank about a quarter of it. Powell asked if he could look in the van. Defendant said nothing, but he took his keys out of his pocket and unlocked the door. Defendant then pressed the door release and the door came open. Defendant stepped back, Powell pushed the door latch and the door opened entirely. Powell reached in, picked up the bottle and opened it. He smelled it and returned it to the van.

Powell then asked defendant if he felt the effects of the alcohol, asked defendant to rate his level of intoxication and asked defendant to perform field sobriety tests. After defendant performed some tests, Powell concluded that defendant was under the influence of intoxicants and arrested him. Although Bell was not present during Powell's discussion with defendant or the search of the van, Bell transported defendant to the local police office. At the police office, Powell for the first time read defendant his *Miranda* rights. Defendant was charged with driving under the influence of intoxicants, ORS 813.010, and two counts of second degree manslaughter, ORS 163.125.

Defendant moved to suppress his statements at the scene of the accident on the ground that they were obtained while he was in custody and before he had been advised of his *Miranda* rights. Defendant further argued that the state's evidence was obtained through a warrantless "seizure" that was not supported by probable cause. Defendant also moved to suppress evidence obtained from the warrantless search of his van.

At a hearing on the motions, Bell and Powell described their observations. Defendant testified that he knew that he was legally required to stay at the scene. Defendant also testified that he is a cooperative, polite, methodical person and that his perception on the night of the accident was not affected in any way. Defendant further testified that,

although the accident created some degree of stress or anxiety, he did not believe that his perception was impaired. Defendant also testified that the alcohol did not affect his perception. Finally, defendant testified that Powell did not threaten him and that he opened the door to his van because he wanted to cooperate. Defendant stated that had Powell asked him to do something unreasonable, he probably would not have cooperated.

The trial court concluded that *Miranda* warnings were not required until Powell "reached a point of believing [defendant] was under the influence," which the trial court said occurred only after defendant performed the field sobriety tests.[1] As for the search of the van, the trial court found that

"when Officer Powell looked into the car, into the van, he did see a bottle there [and] he said he saw the letters even though it appeared to be in a bag, but as much of that showed of the bottle to indicate to the officer that in his plain view he saw something that he wanted to see, that he was investigating this situation and he said to [defendant] would you please open the door of the car, of the van, and [defendant], I can only draw from that, he did consent. He did not make an issue of it and the door was opened * * *."

The trial court denied both of defendant's motions.

After a trial to the court, defendant was convicted of driving under the influence of intoxicants and two counts of criminally negligent homicide. Defendant appeals, assigning error to the denial of his suppression motions.

■■  On review, we accept the trial court's findings of fact that are supported by the evidence in the record and we review the trial court's legal determinations for errors of law. *State v. Lambert*, 134 Or App 148, 151, 894 P2d 1189 (1995). If findings are not made on all the facts, and there is evidence from which the facts could be decided more than one way, we

---

[1] Defendant does not argue that the officer unlawfully conducted the field sobriety tests, *see State v. Nagel*, 320 Or 24, 31, 880 P2d 451 (1994), and we do not address that issue.

will presume that the facts were decided in a manner consistent with the trial court's ultimate conclusion. *State v. Bost*, 317 Or 538, 541, 857 P2d 132 (1993).

Defendant first assigns error to the denial of his motion to suppress all statements and evidence obtained after the accident, arguing that the statements he made at the scene of the accident were unlawfully obtained, because ORS 811.705 required that he remain at the scene of the accident and provide certain information. At the time of the accident, that statute provided:

"(1)   A person commits the offense of failure to perform the duties of a driver to injured persons if the person is the driver of any vehicle involved in an accident that results in injury or death to any person and does not do all of the following:

"(a)   Immediately *stop* the vehicle at the scene of the accident or as close thereto as possible. Every stop required under this paragraph shall be made without obstructing traffic more than is necessary.

"(b)   *Remain* at the scene of the accident until the driver has fulfilled all of the requirements under this subsection.

"(c)   *Give* to the other driver or surviving passenger or any person not a passenger who is injured as a result of the accident *the name and address* of *the driver* and *the registration number* of the vehicle that the driver is driving and *the name and address of any other occupants* of the vehicle.

"(d)   *Upon request* and if available, *exhibit and give* to the persons injured or to the occupant of or person attending any vehicle damaged *the number of any document issued as official evidence of a grant of driving privileges.*

"(e)   *Render* to any person injured in the accident *reasonable assistance*, including the conveying or the making of arrangements for the conveying of such person to a physician, surgeon or hospital for medical or surgical treatment, if it is apparent that such treatment is necessary or if such conveying is requested by any injured person.

"(2)   The offense described in this section, failure to perform the duties of a driver to injured persons, is a Class

C felony and is applicable on any premises open to the public."

ORS 811.705 (1983) (*amended by* Or Laws 1993, ch 621, § 1) (emphasis supplied). Defendant contends that, because that statute placed him "in custody" and created "compelling circumstances," the officers were required to provide him with *Miranda*-like warnings before they could question him about the accident and his drinking and before asking him to perform field sobriety tests. In the absence of those warnings, defendant concludes that his statements were obtained in violation of his right against self-incrimination. Defendant recognizes that in *State v. Monroe*, 101 Or App 379, 383, 790 P2d 1188 (1990), this court held that ORS 811.700(1)(a), which requires that a driver provide similar information under similar circumstances, does not violate a defendant's state constitutional right against self-incrimination, because it is "regulatory" and requires only the disclosure of information that does not present a substantial risk of incrimination. Nevertheless, defendant insists that the Oregon Supreme Court's recent decision in *State v. Fish*, 321 Or 48, 893 P2d 1023 (1995), effectively overruled our decision in *Monroe*. The state responds that *Monroe* is still good law. We agree with the state.

At the outset, we note that defendant's argument on appeal is limited to the effect of ORS 811.705. His sole argument is that *the statute itself* placed him in custody and restrained his freedom to leave "from the moment the accident occurred." Defendant does not argue that the arrival, presence or conduct of any of the officers created a need for *Miranda*-like warnings. With that in mind, we limit our discussion to the effect of the statute.

■ Article I, section 12, of the Oregon Constitution provides:

"No person shall be * * * compelled in any criminal prosecution to testify against himself."

Under that section, a person is entitled to *Miranda*-like warnings before questioning when he or she is either in "full custody" or is in circumstances that create a "setting which judges would and officers should recognize to be 'compelling.' "

*State v. Magee*, 304 Or 261, 265, 744 P2d 250 (1987). *Accord State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990); *State v. Rowe*, 133 Or App 41, 46, 889 P2d 1329 (1995). "Compelling circumstances" exist when a reasonable person in a defendant's position would have felt required to stay and answer all of the officer's questions. *State ex rel Juv. Dept. v. Loredo*, 125 Or App 390, 394, 865 P2d 1312 (1993).

■ ■    Additionally, in order to receive protection under Article I, section 12, a person's statements must be sufficiently "incriminating." *See State v. Whitehead*, 121 Or App 619, 623, 855 P2d 1149 (1993) (the inquiry is whether the content of a statement is incriminating); *Monroe*, 101 Or App at 382; *State v. Baumeister*, 80 Or App 626, 629, 723 P2d 1049, *rev den* 302 Or 299 (1986) (consent to a search is not an incriminating statement). A "remote possibility of self-incrimination is not sufficient to trigger Article I, section 12[.]" *Monroe*, 101 Or App at 382. Rather, "a substantial risk of self-incrimination is necessary." *Id.* Whether a statement is incriminating typically depends on the facts of each case. *Whitehead*, 121 Or App at 625.

In *Monroe* we addressed ORS 811.700(1)(a)[2] and Article I, section 12. We said:

"[T]he statute does not require a report to the police, but only the furnishing of information to the other driver. That

---

[2] At the time of that decision, ORS 811.700(1)(a) provided:

"A person commits the offense of failure to perform the duties of a driver when property is damaged if the person is the driver of any vehicle and the person does not perform the duties required under any of the following:

"(a) If the person is the driver of any vehicle involved in an accident that results only in damage to a vehicle that is driven or attended by any other person the person must perform all of the following duties:

"(A) Immediately stop the vehicle at the scene of the accident or as close thereto as possible. Every stop required under this subparagraph shall be made without obstructing traffic more than is necessary.

"(B) Remain at the scene of the accident until the driver has fulfilled all of the requirements under this paragraph.

"(C) Give to the other driver or passenger the name and address of the driver and the register number of the vehicle that the driver is driving and the name and address of any other occupants of the vehicle.

"(D) Upon request and if available, exhibit and give to the occupant of or person attending any vehicle damaged the number of any documents issued as evidence of driving privileges granted to the driver."

fact reduces the risk of criminal liability and suggests that prosecution is not an aim of the statute. Second, because most accidents do not result in criminal liability, the statute does not seek disclosure of information that is inherently related to criminal prosecution. *See California v. Byers*, [402 US 424, 429, 91 S Ct 1535, 29 L Ed 2d 9 (1971)]. Third, the purpose of ORS 811.700(1)(a) is noncriminal. 'The essence of the statute is to maximize the protection of one injured in an accident * * *.' *State v. Hulsey*, 3 Or App 64, 71, 471 P2d 812 (1970); *see also State v. Burris*, 10 Or App 297, 300, 500 P2d 265 (1972)."

*Monroe*, 101 Or App 379. Accordingly, we held that ORS 811.700 does not violate Article I, section 12.

■ For similar reasons, we conclude that ORS 811.705(1) did not create "compelling circumstances." In a nutshell, that statute required that defendant provide to the pedestrians his name, address, vehicle registration number and, possibly, his driver's license number. The statute did not require that defendant provide any information to Bell and Powell, and it did not require that he answer any of their questions regarding the accident and his state of intoxication or that he perform the field sobriety tests. Indeed, the statute required no interaction whatsoever with the police. *See Monroe*, 101 Or App at 383. We conclude that ORS 811.705(1) did not, in and of itself, create compelling circumstances.

Nothing in *Fish* undermines that reasoning. In *Fish*, the Supreme Court considered the admissibility of a defendant's refusal to perform certain field sobriety tests as evidence in a DUII prosecution. The court recognized that, under the relevant statutes, the defendant had two choices: (1) to perform unspecified field sobriety tests and thus provide testimonial evidence that would have demonstrated his guilt, or (2) to refuse and thus provide testimonial evidence that the defendant thought he was guilty. The court held that the defendant's "choice" was illusory in that both options required him to testify against himself. The court concluded that, because the defendant's testimony under either option was compelled, requiring him to make the statutorily-required choice violated his right against self-incrimination. *Fish*, 321 Or at 63.

An examination of defendant's choices in this case demonstrates that ORS 811.705 is different from the statutes at issue in *Fish*. Defendant could have left the scene of the accident and faced possible prosecution for failure to remain until he fulfilled his duties as a driver, or he could have remained at the scene and provided the required information. As we have said, the latter choice would not have violated defendant's right against self-incrimination, because he was not compelled to provide any testimony to the government and he was not compelled to provide any testimony that posed a substantial risk of incrimination. Defendant, thus, was not presented with a "Hobson's choice." Despite defendant's assertions to the contrary, *Fish* is not "analytically identical."

Defendant also asserts that ORS 811.705(1) placed him "in custody." The key issue is not whether defendant was technically "in custody," but, rather, whether defendant was in a setting that should be recognized as "compelling." *Magee*, 304 Or at 265. As we have said, defendant was not in such a setting. Further discussion of defendant's argument is unnecessary. We conclude that the trial court did not err in denying defendant's motion to suppress statements that defendant made before receiving *Miranda*-like warnings.

Next, defendant argues that the requirement that he remain at the scene until he fulfills his duties as a driver unlawfully "seized" him in the absence of probable cause. We disagree.

A person is "seized" when an officer temporarily restrains a person's liberty or when an officer arrests a person. *State v. Holmes*, 311 Or 400, 409, 813 P2d 28 (1991); *see also* ORS 133.005(1) (defining "arrest"). Statutes do not seize people and statutes do not develop probable cause or reasonable suspicion.

Defendant insists that *Nelson v. Lane County*, 304 Or 97, 743 P2d 692 (1987), and *State v. Boyanovsky*, 304 Or 131, 743 P2d 711 (1987), require a contrary conclusion. We disagree. In *Nelson*, the court held that officers who stopped the defendant pursuant to an administrative roadblock unlawfully seized her, because they had no warrant or suspicion of wrongdoing, and the roadblock was not supported

by judicial approval or legal authority. *Nelson*, 304 Or at 104-06. Likewise, in *Boyanovsky*, the court held that officers who stopped the defendant in the absence of a warrant or belief that a crime had been committed could not justify their stop on the theory that it was pursuant to an authorized roadblock, because the roadblock was used to gather evidence for a criminal prosecution. *Boyanovsky*, 304 Or at 134. In this case, defendant is not asserting that the officers stopped or seized him. Instead, defendant is asserting that the statute did that. *Nelson* and *Boyanovsky* are therefore inapposite. ORS 811.705 did not "seize" defendant. We conclude that the trial court did not err in denying defendant's motion to suppress evidence on the ground that the statute "seized" him without probable cause.

Defendant next assigns error to the trial court's denial of his motion to suppress evidence obtained as a result of the warrantless search of his van. Defendant argues that, under the totality of the circumstances, "it simply cannot be said that the search * * * was authorized by knowing, voluntary and intelligent consent by [defendant]." The state argues that the trial court's finding that defendant consented is supported by the record and that the circumstances surrounding that consent demonstrate that it was voluntary. Alternatively, the state argues that the search was permissible under the automobile exception to the warrant requirement. Finally, the state argues that even if the search of defendant's van was unlawful, the only evidence subject to suppression is Powell's testimony that he smelled the contents of the bottle and that he confirmed that it was vodka. Because that evidence was of "minimal weight in relation to the remainder of the state's case against defendant," the state contends that any error in admitting that evidence was harmless. We agree with the state that defendant's consent was voluntary.

■    Again, if they are supported by the evidence, we accept the trial court's findings, including its finding that defendant "consented." *State v. Bea*, 318 Or 220, 229, 864 P2d 854 (1993); *State v. Little*, 249 Or 297, 300, 302, 431 P2d 810, *cert den* 390 US 955, 88 S Ct 1048, 19 L Ed 2d 1148 (1968). We determine as a matter of law whether those facts support the conclusion that consent was "voluntary." *State v. Stevens*,

311 Or 119, 135, 806 P2d 92 (1991); *State v. Arroyo-Sotelo*, 131 Or App 290, 294-95, 884 P2d 901 (1994).

▬▬▬▬▬ Article I, section 9, of the Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

A warrantless search does not violate that provision if the search is authorized by consent. *Bea*, 318 Or at 229. When the state relies on consent to support a search, it must prove by a preponderance of the evidence that the consent was voluntary. *Stevens*, 311 Or at 137; *State v. Johnson*, 120 Or App 151, 155, 851 P2d 1160, *rev den* 318 Or 26 (1993). In assessing voluntariness, we examine the totality of the circumstances to determine whether a defendant's consent was the product of the defendant's free will or was the result of express or implied coercion. *State v. Parker*, 317 Or 225, 230, 855 P2d 636 (1993); *Stevens*, 311 Or at 135.

▬▬▬▬▬ Voluntary consent may be manifested by conduct, such as opening a trunk in response to a request. *State v. Ragsdale*, 34 Or App 549, 554, 579 P2d 286, *rev den* 283 Or 503 (1978). Under some circumstances, the failure to object to or to prevent an officer's search may constitute voluntary consent. *See State v. Davis*, 133 Or App 467, 476, 891 P2d 1373 (1995); *see also State v. Paulson*, 313 Or 346, 352, 833 P2d 1278 (1992) (evidence that "consenter" called 9-1-1, allowed medics and officers into residence and never asked officers to leave would establish consent). Mere acquiescence in a police order or demand, however, is not voluntary consent. *State v. Ching*, 107 Or App 631, 634, 813 P2d 1081 (1991) (officer's request was in the nature of a "command"); *State v. Freund*, 102 Or App 647, 652, 796 P2d 656 (1990) (officer's words were unconditional: he stated that he "was there" to pick up marijuana). In determining whether an officer's statement is a request or an order, it is important to consider the officer's tone of voice, *see State v. Sosa-Alvarez*, 122 Or App 350, 353-54, 857 P2d 883 (1993), and whether the statement itself invites a response or mere acquiescence. *See Freund*, 102 Or App at 652.

Furthermore, in deciding whether consent was voluntary, we consider whether physical force was used or threatened, whether weapons were displayed, and whether the consent was obtained in public. *Bea*, 318 Or at 230. We also consider whether the person who gives consent is the subject of an investigation, *State v. Parker*, 113 Or App 513, 517, 835 P2d 918 (1992), *aff'd in part and rev'd in part on other grounds* 317 Or 225, 855 P2d 636 (1993), the number of officers present, *State v. Bonham*, 120 Or App 371, 374, 852 P2d 905, *rev den* 317 Or 584 (1993), and whether the atmosphere surrounding the consent is antagonistic or oppressive, *Sosa-Alvarez*, 122 Or App at 353-54. Drug use may be a relevant factor in determining whether consent is voluntary if it impairs a defendant's capacity to make a knowing, voluntary and intelligent choice. *See Stevens*, 311 Or at 136. Drug use, however, is not determinative. *See id.*; *State ex rel Juv. Dept. v. Doty*, 138 Or App 13, 21, 906 P2d 299 (1995). Finally, we bear in mind that "[a]lthough there may be elements of coercion in every police-citizen encounter, not every coercive factor inducing consent to search is constitutionally impermissible." *State v. Jacobus*, 106 Or App 496, 500, 809 P2d 108 (1991), *aff'd on other grounds* 318 Or 234, 864 P2d 861 (1993).

Defendant does not contend that consent was not given, that the search exceeded the scope of any consent that was provided or that the consent was tainted by unlawful police conduct. Rather, defendant argues only that consent was not constitutionally sufficient, because it was involuntary. In support of that argument, defendant points to the following supposed facts: (1) Powell "ordered" that defendant open the door, (2) defendant was "surrounded by police vehicles with their lights flashing and near numerous other officers in badge and uniform," (3) defendant was concerned about the accident that he had just caused, and (4) defendant was "stuporous" because he had been drinking. The state responds that Powell did not order defendant to open the door, that the presence of other officers did not create a coercive atmosphere, and that defendant's state of mind and alcoholic impairment did not constitute police coercion. We agree that defendant's consent was voluntary.

The trial court found that Powell did not order defendant to open the door of the van. The court instead found that

Powell said to defendant, "would you please open the door of the car, of the van." That finding is supported by the record. Powell's statement invited a response such as "yes" or "no," not mere acquiescence.

The trial court did not make express findings regarding defendant's other assertions. However, so long as the record contains sufficient evidence, we presume that the facts were decided in a manner consistent with the trial court's ultimate conclusion that consent was voluntary. *See Bost*, 317 Or at 541. The record before us contains evidence that the cars were parked in a manner either to protect the injured pedestrians or to assist in directing traffic and there is evidence that when defendant gave consent, only Powell was near him and the other two officers were either directing traffic or interviewing other witnesses. In addition, defendant testified at the pretrial hearing that his perceptions remained entirely unaffected by anxiety and alcohol and that he opened the van door in an effort to cooperate. That evidence supports the trial court's presumed findings that the police cars and officers did not "surround" defendant and that defendant's anxiety and alcohol consumption did not undermine his capacity to consent. We conclude that the trial court correctly determined that defendant's consent was voluntary and that it did not err in denying defendant's motions to suppress.

Affirmed.