Argued and submitted December 21, 1995, affirmed June 26, petition for review denied October 22, 1996 (324 Or 323)

STATE OF OREGON,
*Respondent,*

*v.*

MERLIN LAVOY LEAVITT,
*Appellant.*

(94-CR1164; CA A85635)

920 P2d 552

David C. Degner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

PER CURIAM

Armstrong, J., dissenting.

## PER CURIAM

Defendant appeals his conviction for possession of a controlled substance and being a felon in possession of a restricted weapon. ORS 475.992; ORS 166.270. He contends that the evidence used to convict him of those charges was obtained from an illegal search. We affirm.

■■ The issue turns on whether a police officer saw the weapon in plain view before the officer searched the car containing it. The officer testified that he had, and the trial court believed that testimony. Under our scope of review, we are bound by the trial court's findings of historical fact if there is any evidence to support them. *See, e.g.*, *State v. Sosa-Alvarez*, 122 Or App 350, 353, 857 P2d 883, *rev den* 318 Or 98 (1993).

The arrest of defendant and the search of the car were recorded on videotape, which we have reviewed. Although our review of the videotape might lead us to a different conclusion, the trial court viewed the videotape and found the officer's oral testimony credible. Consequently, there is evidence to support the trial court's findings and we are bound by them.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority affirms defendant's conviction because it concludes from its review of the videotape of defendant's arrest that the officer could have seen the weapon in plain view, as he testified that he had. I respectfully dissent because, on this record, I do not believe that a reasonable factfinder could find that the officer saw the weapon when he testified that he did.

Officer Vincent stopped defendant because he was operating a motor vehicle without a seatbelt. Vincent videotaped the entire encounter with defendant. The following facts are drawn from viewing the videotape and from Vincent's testimony at trial. Vincent approached defendant's car and asked for defendant's license and registration. He also asked for identification from a passenger in the car, because the passenger also was not wearing a seatbelt. A check of

defendant's license indicated that there was an outstanding California arrest warrant for defendant for a parole violation.

Vincent called for backup and waited for other officers to arrive before arresting defendant.[1] He then approached the car and asked defendant to step out of it. He told defendant to place his wallet on the dashboard before leaving the car. After asking defendant to step out of the car, Vincent backed away from it. He was standing to the rear of the car, about six to eight feet from it, when defendant opened the door and got out of the vehicle. After getting out of the car, defendant shut the door and stepped away from the car with his hands in the air. Vincent told defendant that he was under arrest for violating his parole in California. Vincent handcuffed defendant and placed him in his patrol car.

Once Vincent had put defendant in the patrol car, he asked for defendant's permission to search his car. Defendant said there was no reason for Vincent to search the car. Vincent repeatedly asked for defendant's permission, which defendant declined to give. Finally, Vincent said to another officer that he did not need permission to search the passenger area of the car because he could conduct that search as a search incident to arrest. Vincent stated that he would remove the passenger from the car and search the front area and then ask for permission to search the rear of the car. Vincent mentioned to another officer that he had seen something that looked like a police scanner on the front seat of the car. During the time that he placed defendant under arrest and spoke with defendant in the patrol car, Vincent left the passenger unattended in the car.

Vincent again approached the car and asked the passenger to step out and walk to the rear of the car. One of the other officers patted the passenger down while Vincent opened the driver's side car door and reached for defendant's wallet. He examined the wallet and then handed it to one of the other officers. Vincent then bent into the car and came out holding a small object. He exclaimed to another officer, "Hey buddy, sitting right behind the passenger's, right

---

[1] It appears from the videotape that there were four or more officers at the scene.

behind the driver's seat. Double-edged concealed weapon." Further search of the vehicle turned up a paper that contained residue of methamphetamine, among other things. .

At trial, the state conceded that the search of the car was not valid as a search incident to an arrest. Because defendant was arrested for a parole violation, there was no evidence of that crime that could be expected to be found in the car. *See State v. Cook*, 114 Or App 571, 836 P2d 160 (1992). Defendant moved to suppress the evidence of the knife and the methamphetamine, arguing that the evidence resulted from an illegal search. The state argued that the seizure of the knife was valid as a seizure of evidence that was in plain view.

Vincent testified at trial that he saw the knife when defendant got out of the car to be placed under arrest. Vincent stated, "[A]s he cleared the door jamb, so to speak, I noticed a sheath, a knife—sheath on the knife—on the driver's seat of the vehicle." The trial court found:

> "The officer observed the knife in the sheath when defendant exited the vehicle. The knife, previously out of the officer's view, came into view as defendant exited the car. Although Officer Vincent clearly stated on the tape that he found the knife 'behind' the seat, carefully [*sic*] review of the officer's actions at the point show that he was reaching into the driver/passenger area of the car, not behind the seat. Either the officer mis-spoke or the tape did not pick-up additional words, as the officer's actions on the tape are consistent with his in court testimony.

> "Having seen the knife, knowing the knife was in the area defendant had just occupied in the vehicle and believing defendant had been convicted on a felony charge in California based upon the information received from his dispatcher and his work in that state, the officer had probable cause to believe defendant had committed the crime of possession of a restricted weapon in violation of ORS 166.270. Officer Vincent was authorized to seize the knife, which was in plain view at the that time, as evidence of that crime."

Defendant disputes the trial court's findings. He argues that it is obvious from viewing the videotape that Vincent did not

see the knife until after he had decided to search the car incident to defendant's arrest. We review to determine whether the court's finding that Vincent saw the knife in plain view when defendant got out of the car is supported by evidence in the record. *See State v. Sosa-Alvarez*, 122 Or App 350, 353, 857 P2d 883, *rev den* 318 Or 98 (1993).

After carefully reviewing the videotape of the encounter between defendant and Vincent, I conclude that Vincent's actions and statements on the tape preclude a finding that Vincent saw the knife when he testified that he did. The videotape reveals that Vincent could not have seen the knife from the place he was standing when defendant got out of the car. Vincent was at least six to eight feet away and was standing to the rear of the passenger compartment. He simply could not have seen the knife, which he testified at trial was found on the middle of the bench seat tucked toward the back of the seat, next to the seatbelt.

The state argues that, because the court's finding is supported by evidence in the record, namely by Vincent's testimony, this court cannot disturb the court's factual finding. But for the videotape, the state would be correct. However, the videotape reveals that Vincent's testimony cannot be correct, so it cannot support a finding that Vincent saw the knife before he conducted the search.

Furthermore, it is impossible to believe that Vincent would not mention the knife to any of the other officers at the scene prior to retrieving it. Vincent testified at trial that the knife was "a double-edged throwing knife. It's a balanced type of knife. It's not heavier on one end, so if it's thrown, it has a true flight." He further explained that the knife blade protruded through the sheath, which enabled the knife to be used without removing the sheath. Even so, Vincent left the passenger in the car with the knife for three full minutes before he returned and asked the passenger to step out of the car. He did not say anything to the passenger about staying away from the knife when leaving the car. He also did not warn any of the other officers at the scene that there was a weapon in the car with the passenger. Prior to searching the

car, he did mention that he had seen something that resembled a police scanner sitting on the seat. But he did not mention the knife, which was allegedly right next to the scanner. Based on Vincent's statements at trial, in which he expressed his concern about officer safety, it is impossible to imagine that he would leave an armed man unattended without mentioning the problem to any officer at the scene.

Furthermore, Vincent's statement when he removed the knife confirms that he did not know of its existence before he conducted the search. He said, "Hey buddy, sitting right behind the passenger's, right behind the driver's seat. Double-edged concealed weapon." That statement announces a discovery; it cannot be understood any other way.

On this record, no reasonable factfinder could find that Vincent saw the knife in plain view when defendant stepped out of the car. It follows, then, that there is no evidence to support the trial court's finding that he did. Because there is not, I would hold that Vincent's search of the car was illegal and that the fruits of the search must be suppressed. I therefore respectfully dissent.