Argued and submitted December 22, 1998, affirmed April 28, 1999

# STATE OF OREGON,
## *Appellant,*

*v.*

# MICHAELE PLUMMER,
## *Respondent.*

## (C 9306-33986; CA A98961)

980 P2d 676

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Erika L. Hadlock, Assistant Attorney General.

Louis R. Miles, Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, Public Defender.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, S. J.*

Edmonds, J., dissenting.

---

* Retired February 28, 1999.

## WARREN, S. J.

The state appeals from an order in which the trial court suppressed evidence of the contents of a syringe and of material allegedly taken from defendant's purse after her arrest for assaulting a police officer. The court entered the order on remand from our reversal of a previous order suppressing the same evidence. In the order now before us, the trial court concluded that the arresting officer did not have probable cause to believe that the syringe contained a controlled substance and that she did not have probable cause to arrest defendant for possession of a controlled substance. It therefore suppressed all the challenged evidence except for the syringe itself, because the syringe was the weapon that defendant allegedly used in assaulting the officer. In light of our standard of review of the trial court's factual findings, we affirm.

We take the facts from our previous decision. *State v. Plummer*, 134 Or App 438, 895 P2d 1384 (1995):

> "In June 1993, defendant visited her former boyfriend, Cisco, at a Portland motel. Shortly after defendant entered Cisco's room, his friend, Cavagnaro, entered the motel parking lot. Deputy Mockler followed Cavagnaro into the lot, because she noticed that the registration on his car had expired. Cavagnaro could not produce a driver's license or registration for the car. At that time, Cisco approached the car. Mockler asked both men to step away from the car. Deputy Malanaphy then arrived. Mockler arrested Cavagnaro for failure to possess and display a driver's license and put him in her patrol car. She then tried to confirm his identity and to determine whether the car he had been driving was stolen. Cavagnaro told Mockler that he and Cisco were staying in Room 2 at the motel and said that there might be something that would confirm his identity in the room.

> "In the meantime, Malanaphy did a precautionary pat-down of Cisco to determine whether he had any weapons on his person. During the pat-down, Malanaphy discovered methamphetamine on Cisco and arrested him. Mockler knocked on the door to Room 2. The testimony about what happened next is in conflict. Mockler testified that defendant let her into the room. When Mockler asked defendant about her identity, defendant gave only her first name and

began to appear nervous. Defendant went to her purse and began to rummage through it with her back turned away from Mockler. Mockler became concerned about her safety and asked defendant to step away from the purse. On the other hand, defendant testified that she told Mockler her full name and that when she went to get her driver's license, Mockler came into the room uninvited and began searching through various containers. The parties agree that, shortly after Mockler asked defendant about her identity, defendant ran to the bathroom and flushed a plastic baggie down the toilet. Mockler did not see the contents of the baggie.

"The evidence about what happened next is also in conflict. Mockler testified that when she apprehended defendant in the bathroom, defendant attacked her and pierced her skin with a syringe. Mockler wrestled defendant to the ground and arrested her. Mockler testified that she observed a brown substance, which she thought was methamphetamine, in the syringe. Defendant testified that, after she flushed the baggie down the toilet, she instinctively put up her hands when Mockler tackled her. She said that she saw a syringe lying on the floor and tried to push it away from her face, but Mockler took her hand.

"After Mockler put defendant in the patrol car, she went back into the room and seized the syringe. She also searched defendant's purse. She testified that she seized drug paraphernalia and drug records from it. Defendant claimed that those items came from other containers in the room. Later, defendant moved to suppress 'any and all evidence of whatever kind * * * which the state intends to offer as a basis of defendant's conviction herein.' The trial court granted the motion, in part, and it suppressed the contents of the syringe and the evidence allegedly seized from defendant's purse." 134 Or App at 440-41 (footnote omitted).

The trial court based its original decision to suppress on its conclusion that Mockler arrested defendant solely for assault. It expressly refused to believe Mockler's testimony that she actually arrested defendant for possession of a controlled substance, the methamphetamine that Mockler allegedly saw in the syringe. Because Mockler did not arrest defendant for possession, the court concluded, she could not search her incident to an arrest on that charge. On appeal, we reversed the order suppressing evidence, holding that the

trial court had failed to recognize that Mockler could search incident to a *presumed* arrest for possession of a controlled substance if, when she arrested defendant for assault and before she conducted the search, Mockler also had probable cause to arrest for possession. We remanded the case for the trial court to determine whether Mockler in fact had probable cause to make such an arrest and whether she had probable cause to believe that the syringe contained a controlled substance. 134 Or App at 441-43.

On remand, the trial court, without taking new evidence or hearing additional argument, entered an order in which it found that Mockler did not have probable cause to believe that the syringe contained a controlled substance and did not have probable cause to arrest defendant for possession of a controlled substance. It therefore again suppressed the same evidence that it had previously suppressed. The state appeals from that order.

■ Probable cause has two components, an objective one and a subjective one. "An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable under the circumstances." *State v. Owens,* 302 Or 196, 204, 729 P2d 524 (1986). The state points to considerable evidence in the record that a belief that defendant had committed the crime of possession of a controlled substance would be objectively reasonable. It also cites Mockler's testimony that, if believed, would show that she believed that defendant had committed that crime and, thus, had subjective probable cause. The problem for the state is that the trial court apparently did not believe Mockler's testimony in this respect.

In explaining its original suppression order, the court described why it did not believe that Mockler arrested defendant for possession, despite Mockler's testimony that she had done so:

> " '[T]he officer testified * * * that she saw some minuscule brown substance in the needle, after she had been assaulted [and] taken to the floor [and] that she really [arrested defendant] for that methamphetamine.

> " 'I don't really believe that. I believe what happened, that she arrested [defendant] because she was assaulted and that incident to this arrest she can seize the needle, she can't go looking around for everything else in the apartment.' " *Quoted in Plummer*, 134 Or App at 442.

The trial court also commented that, after hearing the evidence on the motion to suppress, it determined "that part of each of these versions contain kernels of truth and also certain measures of the other stuff."

 The court did not expressly state that it disbelieved Mockler's testimony that she believed that the needle contained a controlled substance. In light of its disbelief of her testimony about the grounds for arresting defendant, however, the explanation for the court's renewed order suppressing the evidence may well have been that it did not believe her testimony about what she saw in the syringe or that she otherwise had probable cause to arrest for possession. Under our standard of review, that is what we must assume the trial court did. We will not disturb the trial court's findings of fact on a motion to suppress evidence if there is evidence in the record to support the findings. If the trial court fails to make express findings on all pertinent facts and there is conflicting evidence in the record, we will presume that it found facts consistent with its ultimate conclusion. *State v. Keeney*, 323 Or 309, 317, 320, 918 P2d 419 (1996); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). When a witness has been found false in part of the witness' testimony, the trial court may disbelieve part or all of the rest of the testimony. *See Keeney*, 323 Or at 319-20 (when trial court finds on motion to controvert that search warrant affiant was false in part of affidavit, it may disbelieve some or all of the rest of the affidavit).

If the trial court did not believe Mockler, then it could properly have found that she did not have subjective probable cause to arrest defendant for possession of a controlled substance. Lack of probable cause to arrest, of course, would mean that there could be no search incident to a presumed arrest on that charge and that the things seized pursuant to such a presumed arrest should be suppressed.[1]

---

[1] The trial court held that Mockler properly seized the syringe itself as evidence of the crime of assault. The state does not argue that, after that seizure and

The evidence that the dissent discusses shows primarily that there was substantial objective probable cause to support an arrest for possession of a controlled substance. From that evidence, the dissent appears to argue that, as a matter of law, Mockler also had subjective probable cause for such an arrest. The dissent would apparently treat what it believes to be overwhelming evidence of objective probable cause as sufficient to require the trial court to find that there also was subjective probable cause. In so doing, it would combine and confuse the two distinct aspects of probable cause, as the Supreme Court has defined it, into a single unitary test. The proper issue, however, is not how strong the objective probable cause was but what Mockler subjectively believed at the time of the arrest. The trial court expressly rejected the state's argument that Mockler in fact arrested defendant for possession, and it disbelieved at least part of her testimony. Those actions suggest that the court did not necessarily accept Mockler's explanation of her actions and that it did not think that Mockler believed that she had probable cause for an arrest for possession.[2]

■ The question is not how we would rule on this issue if we had *de novo* review of the facts. Rather, the question is whether the evidence compels a conclusion about Mocker's internal thought process. That is an inherently factual issue that, under *Ball*, is committed to the trial court. Although it would have been preferable for the trial court to have entered express findings on remand, *Ball* requires us to resolve all evidentiary conflicts in favor of the trial court's ultimate conclusion. In light of the trial court's express distrust of at least part of Mockler's testimony, her subjective beliefs are necessarily among those conflicts. The situation, thus, is similar to that in *State v. Leavitt*, 141 Or App 588, 920 P2d 552, *rev den* 324 Or 323 (1996), in which, according to the dissent in

after the arrest, Mockler or some other officer obtained both objective and subjective probable cause to believe that the syringe contained methamphetamine. Because the state does not make that argument, it also does not make the additional argument that that probable cause would independently permit testing of the contents of the syringe.

[2] Mocker's actions do not require the conclusion that she thought that she had probable cause to arrest for possession. Chasing defendant into the bathroom, for instance, is something that an officer might do, for reasons of safety, whenever a suspect suddenly bolted.

*Leavitt,* the trial court found facts that were directly contrary to the officer's actions as shown in a contemporaneous videotape. We concluded that, although we might have reached a different conclusion from the trial court's, we were bound by its findings of historical fact because there was evidence to support them. That is the nature of our review in cases of this sort, including this one. As in *Leavitt,* it requires us to affirm the trial court's order.

Affirmed.

**EDMONDS, J.,** dissenting.

This case involves the issue of whether the search of defendant's purse after her arrest was unlawful. If the arresting officer, Mockler, had probable cause to arrest defendant for possession of a controlled substance, the purse could have been searched incident to such an arrest.[1] The trial court held after remand that Mockler had probable cause to arrest defendant only for assault. The majority errs when it affirms the trial court and concludes that the trial court properly found that the arresting officer, Mockler, did not have subjective probable cause to arrest defendant for possession of a controlled substance. Although a trial court's findings of historical fact, if supported by the evidence, are binding on us, its legal conclusions based on those facts are not. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968). The issue of probable cause to arrest is a question of law. *State v. Herbert,* 302 Or 237, 241, 729 P2d 547 (1986). As will become evident, Mockler had both objective and subjective probable cause to arrest defendant for possession of a controlled substance.

In our prior opinion, *State v. Plummer,* 134 Or App 438, 895 P2d 1384 (1995), we recited evidence from which the trial court could have found that Mockler had been directed

---

[1] It matters not whether the officer articulated to the defendant the crime for which probable cause to arrest existed or whether the defendant was arrested for that offense or some other offense. Probable cause to arrest has both an objective and a subjective component. In *State v. Owens,* 302 Or 196, 204, 729 P2d 524 (1986), the court said:

"The test is not simply what a reasonable officer *could have* believed when he conducted a warrantless search or seizure, but it *is* what [the] officer actually believed, based upon the underlying facts of which he was cognizant, together with his own training and experience. * * * What is required is that the officer formulates such a basis to himself at the time he acts." (Emphasis in original.)

to the motel room, in which defendant was found, by Cavagnaro, who had been arrested for failure to possess and display a driver's license in the motel parking lot. Cavagnaro told Mockler that he and Cisco, his companion, were staying in the motel room and that there might be something in the room that could confirm his identity. During the patdown of Cisco in the parking lot, methamphetamine was discovered on his person, resulting in his arrest. Mockler proceeded to the motel room where she found defendant. What happened next is the subject of conflicting testimony. However, we said:

> "The parties agree that, shortly after Mockler asked defendant about her identity, defendant ran to the bathroom and flushed a plastic baggie down the toilet. Mockler did not see the contents of the baggie." *Id.* at 440-41.[2]

On the initial appeal of this case, we remanded for "findings" on whether Mockler "also had probable cause to arrest defendant for possession of a controlled substance." *Id.* at 442-43. The trial court purported to find after remand:

> "1. Deputy Mockler did not have probable cause to believe that the syringe seized contained a controlled substance.
>
> "2. Deputy Mockler did not have probable cause to arrest defendant for possession of a controlled substance.
>
> "3. Deputy Mockler did have probable cause to believe that the syringe was used as a weapon and therefore subject to seizure."

None of the above statements constitute findings of fact; they are conclusions of law. Findings of fact relate to what occurred, and they resolve conflicts in the evidence. Conclusions of law express the legal effect of those findings. Thus, the trial court has failed to comply with our order on remand. Ordinarily, another remand to follow our original instructions would be appropriate under the circumstances. However, in this instance, the record reflects uncontroverted evidence that demonstrates as a matter of law that Mockler

---

[2] Defendant testified, "I got scared because of the pot I had in my pocket. So when [Mockler] moved away from the table, went around * * * to the nightstand to look and then walked around the bed to look either beside the bed or near the dresser, I took advantage of the situation and I stepped to the bathroom to flush the pot."

had probable cause to arrest defendant for the possession of a controlled substance.

Under ORS 133.310(1)(a), an officer may arrest a person without a warrant "if the officer has probable cause to believe that the person has committed * * * [a] felony." ORS 131.005(11) defines the amount of objective knowledge required to provide probable cause. Probable cause to arrest exists if "there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." *Id.* "[I]t is not essential that the officer absolutely know that an offense is being committed. * * * [C]ircumstances must exist which would lead a reasonably prudent [person] to believe in the guilt of the accused." *State v. Elk*, 249 Or 614, 619-20, 439 P2d 1011 (1968). To determine probable cause, we look to the totality of the circumstances, including all reasonable inferences that could be objectively drawn from the evidence in the light of the officer's experience. *State v. Martin,* 327 Or 17, 22-23, 956 P2d 956 (1998).

Even if the trial court disbelieved Mockler's testimony that she saw a brown substance in the syringe before she physically subdued defendant, the record is uncontroverted that Mockler saw defendant run into the bathroom and flush a baggie down the toilet before the alleged assault occurred. Mockler knew, before she encountered defendant in the room, that Cisco earlier had been found in possession of controlled substances and that he had been staying in the motel room. She could reasonably infer from defendant's actions in the motel room that the baggie that defendant flushed down the toilet in her presence contained a controlled substance, which defendant was trying to destroy before it was discovered and seized. *See Herbert,* 302 Or at 242 (reasoning that a container associated with the storage and transportation of drugs that a defendant attempts to hide in a furtive manner are factors to be considered when determining whether there is probable cause to believe that they contain drugs). Because Mockler had objective probable cause to arrest defendant for possession of a controlled substance at that moment, it makes no difference whether she later saw a brown substance in the syringe.

Ultimately, the issue turns on whether Mockler believed that defendant was in possession of controlled substances at the time of the arrest. The majority contends that it cannot be said as a matter of law that Mockler believed that defendant was destroying drugs when she ran into the bathroom and flushed a baggie down the toilet. In fact that is the only reasonable inference that can be drawn from the evidence. Mockler testified:

"Q. What happened then?

"A. She ran for the bathroom. She ran towards the back to the bathroom.

"* * * * *

"Q. What did you do?

"A. I ran after her.

"Q. Why?

"A. Based on my knowledge and experience, that I thought she was trying to destroy something.

"Q. As you ran after her, what happened?

"A. I could see—when I ran after her, I could see—as she reached the toilet, I could see her flush a baggie, and I can't testify, I don't know what was in the baggie. It looked like a baggie that is commonly used, you know, in drug—the drug world that I see all the time, and she flushed when she got to the toilet."

The majority posits that the trial court was not required to believe Mockler's testimony in that regard and implies that, in fact, it did not.[3] However, what really occurred in the trial court is that the court did not believe that Mockler saw a brown substance in the syringe before she arrested defendant. That was the issue in dispute. The court said at the close of the evidence,

"I have determined in my mind that part of [Mockler's and defendant's differing versions about what occurred after

---

[3] The majority asserts, "[i]f the trial court did not believe Mockler, then it could properly have found that she did not have subjective probable cause to arrest defendant for possession of a controlled substance." 160 Or App at 280.

Mockler followed defendant into the bathroom] contain kernels of truth and also certain measures of the other stuff. I think the way that I will resolve this matter is this way.

"I think in spite of the state's effort this morning to claim that the defendant was arrested for possession of drugs, which would have to be the case in order to justify a search of her purse under *State v. Owens*.

"It's my belief that the defendant was arrested for her claimed assault on the officer; and hence, in my opinion, that search was illegal, because it was not limited to the evidence of the crime for which she was arrested; hence, the drug evidence will be suppressed.

"However, I think it's a question of fact as to what happened regarding the assault. And I think as an instrumentality of the assault, the needle that is claimed that Ms. Plummer used will not be suppressed because it is evidence of the use of a dangerous weapon in connection with the assault charge.

"It will not be permitted to be introduced for purposes of establishing any drugs, but it will be allowed for its instrumentality as a dangerous weapon. Therefore, [the] drug evidence is suppressed."

At the hearing, the trial court's focus was on whether Mockler saw a brown substance in the syringe as she and defendant wrestled. The trial court rejected the state's position that Mockler had probable cause to arrest defendant for possession of a controlled substance based on her description of what she saw in the syringe. What the trial court failed to consider was whether Mockler had probable cause to arrest defendant for possession of a controlled substance when she saw defendant run into the bathroom and flush a baggie down the toilet before the struggle occurred. The majority misinterprets the record when it relies on the "implicit finding" rule of *Ball v. Gladden* to conclude that the trial court disbelieved Mockler's testimony as to those events.[4] As we

---

[4] The heart of the majority's analysis lies in its belief that, because the trial court ruled that Mockler did not have probable cause to arrest defendant for possession of a controlled substance arising out of what occurred during their struggle, our standard of review under *Ball v. Gladden* compels the holding that the trial court did not believe any of Mockler's testimony. That supposition fails in light of the record, which discloses that the trial court did not impugn Mockler's credibility as to the events about which her and defendant's testimony did not conflict.

said in our first opinion, the parties agree that those events occurred. As a matter of law, the trial court could not have implicitly found otherwise.

Nonetheless, the majority asserts that when Mockler ran after defendant, the trial court could have found that Mockler believed that defendant was doing something else other than flushing drugs down the toilet when she flushed the baggie. The majority suggests that perhaps Mockler was acting for purposes of her safety. That suggestion does not comport with the reality of the uncontradicted facts. Even defendant acknowledges as much. She testified that during the effort to arrest her after she flushed the toilet, Mockler said to her, "did you think you could get away with that, something to that effect." The assault occurred thereafter. Mockler's statement can only refer to defendant's flight to the bathroom and her flushing of the baggie. Mockler's testimony about her experience with the use of baggies in the drug world is uncontested, and the use of baggies to package drugs is well-documented in our and the Supreme Court's case law. There is only one reasonable inference to be drawn from the facts that the parties agree on: that Mockler subjectively believed that defendant was in possession of drugs when she undertook to arrest defendant.

For these reasons, I dissent.