Argued and submitted May 1, affirmed June 19, 1996

STATE OF OREGON,
*Appellant,*

*v.*

MARIAN DEMUS,
*Respondent.*

(TC94-12455; CA A86918)

919 P2d 1182

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

John Henry Hingson III argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

The state appeals from a pretrial order granting defendant's motion to suppress field sobriety tests and all derivative evidence. We affirm.

We recite the facts as presented by testimony at the suppression hearing and as found by the trial court. Shortly before 2:30 a.m. on May 21, 1994, Officer Shellans saw defendant's car as it turned onto State Highway 26, a four-lane divided highway, and accelerated to highway speed going west in an eastbound lane. Shellans followed, driving his patrol car in a westbound lane. After about six-tenths of a mile, defendant stopped his car, drove across the grass median strip onto a westbound lane and again accelerated to highway speed. Shellans turned on the overhead lights of his patrol car, and defendant promptly and safely pulled off the road and stopped.

When Shellans approached defendant's car, defendant said, "I know I shouldn't be driving, I made a mistake." Shellans immediately smelled a moderate odor of alcohol on defendant's breath and noted that defendant's eyes were bloodshot and watery and that his speech was slightly slurred. In response to Shellans' inquiry about whether he had been drinking, defendant said that he had consumed seven or eight pints of beer between 5:00 p.m. and 1:00 a.m. Defendant did not have a driver's license and informed Shellans that he was visiting from another state. Shellans also observed that, in attempting to produce his automobile registration, defendant passed over it three times, even though it was clearly visible to Shellans from outside the car. Shellans "asked [defendant] if he would step from his vehicle to submit to a series of field sobriety tests and he agreed." Shellans did not, however, advise defendant of the consequences of refusing to perform those tests. *See* ORS 813.135 to ORS 813.136 (requiring officer to inform driver that refusal to submit to field sobriety tests is admissible into evidence in any civil or criminal proceeding).

After conducting several field sobriety tests, Shellans arrested defendant for driving under the influence of intoxicants (DUII), ORS 813.010, and read him *Miranda*

warnings. Shellans then took defendant to the Sandy Police Department, where defendant registered a blood alcohol level of .069 percent on an Intoxilyzer test.

Defendant filed numerous pretrial motions, including a motion to suppress evidence of his performance on the field sobriety tests. The trial court's OMNIBUS HEARING ORDER included its ruling that

"defendant's motion to suppress the field sobriety tests and the derivative evidence, including the result of the intoxilyzer, because the officer lacked probable cause to search the defendant, is allowed[.]"

On appeal, the state offers alternative theories for why the trial court's ruling was error. First, it argues that *State v. Nagel*, 320 Or 24, 880 P2d 451 (1994), does not require that an officer have probable cause before conducting field sobriety tests where, as here, the officer does not advise the driver of the adverse consequences of refusal and the driver voluntarily performs those tests. Alternatively, it argues that Shellans had probable cause to conduct a search by means of field sobriety tests. *See id.* at 31-32, 36-37 (holding that field sobriety tests constitute a search under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution, and that the search is reasonable when it is based on probable cause and under exigent circumstances).

■ We have carefully reviewed the trial court record, including the audio tape of the suppression hearing, and conclude that the state's first theory is presented for the first time on appeal.[1] *See State v. Hickmann*, 273 Or 358, 360, 540 P2d 1406 (1975), cited in *State v. Fish*, 321 Or 48, 59, 893 P2d

---

[1] The issue of whether voluntary consent is an exception to the constitutional prohibition against warrantless searches in the context of field sobriety tests was not raised in the state's response to defendant's memorandum in support of his motion to suppress, nor was it argued at the hearing. Below, the argument was whether evidence of the tests should be suppressed, because the police failed to comply with the administrative rule that requires an officer to warn drivers of the consequence of refusal. OAR 257-25-15. The parties argued whether that failure warrants suppression in the light of *State v. Trenary*, 316 Or 172, 850 P2d 356 (1993), which held that failure of an officer to give the warning required by ORS 813.135 to ORS 813.136 does not require suppression. The constitutional implications of the admission into evidence of those tests was likewise not argued in *Trenary. Id.* at 176 n 3.

1023 (1995) (losing party at trial may not argue on appeal issue that it did not argue before trial court). Consequently, we address only the issue of whether Shellans had probable cause to require defendant to perform field sobriety tests.

In *Nagel*, the Supreme Court held that the state had not run afoul of the prohibitions against unreasonable searches contained in the state and federal constitutions, because the officer had conducted field sobriety tests "with probable cause and under exigent circumstances," which is one of the recognized exceptions to the search warrant requirement. 320 Or at 31-32, 36-37. Under that exception, an officer must subjectively believe that the defendant was driving under the influence of intoxicants, and that belief must be objectively reasonable, before the officer may administer field sobriety tests. *Id.* at 32.

■    In this case, there is no disagreement about whether exigent circumstances existed. *See id.* at 33 (rapid dissipation of blood alcohol content is circumstance necessitating swift action to gather evidence). Nor do the parties dispute the trial court's conclusion that "there is objective probable cause to believe the defendant was under the influence of intoxicants[.]" The state contests only the trial court's finding that Shellans lacked subjective probable cause. We will uphold the court's finding if there is evidence in the record to support it. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991).

■    At the suppression hearing, Shellans testified that before administering the field sobriety tests he had a "reasonable belief that [defendant] was *possibly* driving under the influence of intoxicants." (Emphasis supplied.) That is the only testimony elicited from Shellans with respect to his actual belief before defendant performed those tests. A possibility is insufficient to demonstrate probable cause. *See State v. Chambless*, 111 Or App 76, 80, 824 P2d 1183, *rev den* 313 Or 210 (1992) ("probable" means that it is more likely than not); *see also Winroth v. DMV*, 140 Or App 622, 628, 915 P2d 991 (1996) (officer's suspicion that it was possible that the defendant was driving under the influence does not satisfy subjective prong of probable cause). The trial court's finding that Shellans lacked subjective probable cause is supported by evidence in the record, and we are bound by it.

*Nagel*, 320 Or at 32. The court did not err in granting defendant's motion to suppress. In the light of this disposition, it is unnecessary to address defendant's cross-assignments of error.

Affirmed.