Argued and submitted November 18, 1996, affirmed April 30, 1997

# STATE OF OREGON,
*Respondent,*

*v.*

# SHEILA C. CHAMBERS,
*Appellant.*

(952166C; CA A92265)

938 P2d 793

John Henry Hingson, III, argued the cause and filed the brief for appellant.

Douglas F. Zier, Assistant Attorney General, argued the cause and filed the brief for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant appeals from her conviction for driving while under the influence of intoxicants. ORS 813.010. She assigns error to the refusal of the trial court to exclude evidence of the results of field sobriety tests that she performed, of her blood alcohol content (BAC) and an incriminating statement that she made after she was in custody and had been advised of her constitutional rights. We affirm.

At approximately 1:30 a.m., the arresting officer saw defendant's car make illegal lane changes, drive in the oncoming lane of traffic, drive on the right side of the road where cars park and almost hit a parked car. The officer engaged his overhead lights, and defendant pulled over, parking her car at an angle to the curb. When the officer first approached defendant, he smelled alcohol on her breath and observed that her eyes were bloodshot and watery. When asked for her driver's license, defendant passed over it several times before locating it and handing it to the officer. The officer gave defendant statutory warnings pursuant to ORS 813.135[1] and 813.136[2] and asked her to perform field sobriety tests. He conducted the Horizontal Gaze Nystagmus test, the one-leg-stand test, which included asking defendant to count out loud, and asked defendant to recite the alphabet. When the officer asked her to undergo more tests, defendant asked, "What happens if I say no?" The officer responded, "Well, I will arrest you. As a matter of fact, ma'am, you're under arrest."

The officer transported defendant to the police station, where he gave her *Miranda* warnings and asked her to

---

[1] ORS 813.135 provides, in part:

"Before the [field sobriety] tests are administered, the person shall be informed of the consequences of refusing to take or failing to submit to the tests under ORS 813.136."

[2] ORS 813.136 provides:

"If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

submit to an Intoxylizer test, ORS 813.100. Defendant submitted to the breath test, which revealed a BAC of .209 percent. The officer also asked defendant about her consumption of alcoholic beverages, and she admitted drinking three pints of beer between 10:30 p.m., and 1:30 a.m.

■    When defendant was brought to trial on the charge, she moved to exclude evidence of the field sobriety tests, her BAC test result and her statement. The trial court denied her motions, and the matter went to trial, resulting in defendant's conviction. On appeal, defendant first contends that the trial court erred when it found that the arresting officer subjectively believed before defendant submitted to the field sobriety tests that she was driving while under the influence. *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). We will uphold the court's finding if there is evidence in the record to support it. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991).

When asked, "[W]hy did you ask the defendant to perform field sobriety tests?" the officer testified, "Based on her driving, I thought that she may be impaired, that she may be under the influence of something and I wanted to make sure that she could operate a vehicle safely." Based on that testimony, the trial court found:

"[E]ven though the officer did not use the magic words of 'subjective belief,' the evidence nevertheless demonstrated that at the time the defendant was asked to perform the field sobriety tests the officer did, indeed, have such a subjective belief."

■■    Defendant relies on our holding in *State v. Demus*, 141 Or App 509, 919 P2d 1182 (1996), to support her argument. In that case, we held that the trial court's finding that the officer did *not* have subjective probable cause was supported by evidence in the record. The arresting officer in *Demus* testified that he had "a reasonable belief that [the defendant] was *possibly* driving under the influence of intoxicants." *Id.* at 513 (emphasis in original). Defendant compares the arresting officer's testimony in this case to the officer's testimony in *Demus* and concludes that the trial court was required to find that the officer in this case did not have subjective probable cause. Defendant's reliance on *Demus* is

misplaced. Whether an officer has a belief that a person has committed an offense is a question of fact that depends on the evidence in a particular case. Here, the trial court inferred from the officer's testimony that he believed that it was more likely than not that defendant was under the influence of alcohol, which had resulted in her impaired driving, before he administered the field sobriety tests. Because that inference could be reasonably drawn from his testimony, we uphold it.

Defendant next argues that the BAC test result and her incriminating statement made at the police station were the "tainted fruit" of an involuntary search.

> "The officer told the defendant that if she did not submit to field sobriety tests, evidence of her refusal to so submit could be used against her in court. In the face of that threat, the defendant 'consented' to take the tests."

The field sobriety tests constituted a warrantless search under *State v. Nagel*, 320 Or 24, 37, 880 P2d 451 (1994). A warrantless search under exigent circumstances is lawful if based on probable cause to believe that evidence of a crime is likely to be discovered. Those circumstances existed here. The facts surrounding defendant's driving conduct and the officer's initial contact afford objective probable cause that her driving was impaired because of alcohol consumption. Because the officer's subjective belief that defendant had committed the offense of driving under the influence was objectively reasonable, and because exigent circumstances existed when he gave the statutory warning pursuant to ORS 813.135 and 813.136 before administering the field sobriety tests, the voluntariness of defendant's submission to them is not material.

Defendant's final assignment of error is based on *State v. Fish*, 321 Or 48, 893 P2d 1023 (1995), and its progeny. She argues that the trial court erred by not excluding the BAC test results and her incriminating statement because they were derived from the field sobriety tests, which, according to her, violated her constitutional rights against self-incrimination. The trial court ruled that the physical aspects of the field sobriety tests (such as attempting to walk heel-to-toe) were not testimonial in nature and, therefore, were admissible. That ruling was not error. *State v. Nielsen*, 147

Or App 294, 936 P2d 374 (1997). The trial court suppressed the verbal components of the field sobriety tests (such as counting and reciting the alphabet) on the ground that they were unlawfully compelled testimony under *Fish*.[3] Defendant contends that, even though the verbal components of the tests were suppressed for purposes of trial, they triggered her arrest, which led to the BAC test and her subsequent interrogation. Therefore, the BAC test result and the statement are the fruit of the prior illegality.

■    The mere fact that evidence is obtained after unlawful police conduct does not in itself mean that it is tainted by the prior illegality unless there is a causal connection between the unlawful conduct and the discovery of the evidence. *State v. Rodriguez*, 317 Or 27, 39, 854 P2d 399 (1993). For instance, "The preliminary inquiry regarding the voluntariness of a statement which follows an improperly obtained statement is whether it is in any substantial degree the result of the earlier one." *State v. Foster*, 40 Or App 635, 640, 596 P2d 572 (1979), *rev'd on other grounds* 288 Or 649, 607 P2d 173 (1980). As we stated in *State v. Paz*, 31 Or App 851, 869, 572 P2d 1036 (1977):

> "[A]ll evidence is not 'fruit' simply because it would not have come to light but for the illegal actions of the police. Rather, the controlling question in each case is
>
> " '* * * "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or by means sufficiently distinguished to be purged of the primary taint" * * *.' [*Wong Sun v. United States*, 371 US 471, 488, 83 S Ct 407, 9 L Ed 2d 441 (1963)], quoting from Maguire, Evidence of Guilt 221 (1959)."

We turn first to the BAC test result evidence in the light of defendant's argument. ORS 813.100 provides in part:

> "Any person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent * * * to a chemical test of the person's breath * * * for the purpose of determining the

---

[3] In *Fish*, the court held that the evidence of the defendant's refusal to take field sobriety tests and testimonial aspects of the field sobriety tests were "compelled" testimony in violation of Article I, section 12, of the Oregon Constitution.

alcoholic content of the person's blood *if the person is arrested* for driving while under the influence of intoxicants * * *." (Emphasis supplied.)

■     Under the statute, the Intoxilyzer test is triggered by a lawful arrest. Here, the arrest occurred after the field sobriety tests (the search) were performed and after the testimonial aspects of the tests were elicited from defendant. Nonetheless, the chronology of an arrest/search is not dispositive:

> "If probable cause for an arrest exists independently of evidence brought to light by the search, the fact that the search precedes the arrest does not render the search unreasonable nor destroy its character as an incident of the arrest." *State v. Elk*, 249 Or 614, 621-22, 439 P2d 1011 (1968).

■     On the facts in this case, the officer could have lawfully arrested defendant for DUII before he administered the field sobriety tests. Based on his observations of her conduct while driving and during the initial contact, it was more likely than not that she was under the influence of intoxicating liquor in violation of ORS 813.010(1)(b). The unlawful testimonial aspects of the field sobriety tests are derivative of the search that occurred after probable cause existed to make a lawful arrest. Because the arrest could have been lawfully made without the field sobriety test results, and the Intoxylizer test request was triggered by defendant's arrest under ORS 813.100, we conclude, on this record, that there was no exploitation of the compelled testimonial portions of the field sobriety tests that tainted the consent to take the Intoxilyzer test.

Finally, we turn to defendant's argument about her incriminating statement that was elicited after she had been arrested and had been given the *Miranda* warnings. We note that there is no apparent connection between the subject matter of the field sobriety tests and the subject of the incriminating statement. During the field sobriety tests, she was asked to recite the alphabet and count. In the post-arrest interview, she was asked about the quantity of alcoholic beverages that she had consumed. Second, the interview occurred after she had refused to perform more field sobriety tests, had been transported to the police station and had been

advised of her constitutional rights against self-incrimination. Defendant could not have reasonably believed that the questions at the police station were part of the field sobriety tests and were somehow connected with the statutory warning regarding the field sobriety tests. The passage of time and the change in location separated the events into discrete episodes.

■      Nonetheless, defendant argues that "the cat was out of the bag" by the time that the officer interviewed defendant at the police station.[4] We disagree. Defendant's statements during the field sobriety tests were not admissions of guilt but circumstantial evidence of her impaired state. The passage of time, the change in the location of the place of interrogation, the lack of relationship between the subject matters of the interrogations and the giving of *Miranda* warnings all demonstrate that there was a "clear break" between the field sobriety tests and the custodial interview.[5] Consequently, defendant's argument fails because she is unable to demonstrate an exploitation of the compelled statements made during the field sobriety tests. The trial court did not err by admitting the evidence of defendant's statements about how much she had to drink.

Defendant's other arguments do not require discussion.

Affirmed.

---

[4] The argument is derived from the language of the United States Supreme Court in *United States v. Bayer*, 331 US 532, 540-41, 67 S Ct 1394, 91 L Ed 2d 1654 (1947).

"Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession may always be looked upon as fruit of the first."

[5] *See State v. Dill*, 127 Or App 6, 11, 870 P2d 851 (1994) (holding that the trial court erred by suppressing the defendant's responses to investigatory questions because a "clear break" separated the completion of the field sobriety tests and the investigatory questions where the officer told defendant that there would be "one more test" and at the conclusion of the test said, "Let me ask you a question.").