678

Argued and submitted December 23, 2004, reversed and remanded
September 28, 2005

STATE OF OREGON,
*Appellant,*

*v.*

CHRISTINA LORRAIN BURSHIA,
*Respondent.*

C00-08-50188; A122790

120 P3d 487

Joanna L. Jenkins, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Joshua B. Crowther, Deputy Public Defender, argued the cause for respondent. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant was charged with driving under the influence of intoxicants. ORS 813.010(1)(b). The state appeals from the trial court's order suppressing evidence of defendant's blood alcohol content (BAC) analysis, based on a lack of probable cause. ORS 138.060(1)(c). Because the trial court suppressed the evidence of defendant's BAC, it also suppressed the results from the Drug Recognition Expert (DRE) protocol. The state argues that there was ample evidence constituting probable cause that defendant was driving under the influence of intoxicants. Accordingly, the state asserts, neither the BAC evidence nor the DRE evidence should have been suppressed. We review for errors of law, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), and reverse.

The facts are undisputed. At around 2:30 a.m., Sergeant Hansen observed defendant's car weaving and being driven in the wrong direction of traffic. Hansen called for a marked patrol car to conduct an investigation for a possible driving under the influence of intoxicants (DUII) and stopped defendant. When Hansen approached the driver's side window, he observed defendant conversing with the passenger, "[a]nd it wasn't until I—I announced my presence by speaking with her that she actually realized I was up at her door. It rather startled her." Hansen described defendant's behavior as "[q]uick frequent actions as far as being fidgety, unable to sit still, arms and legs, her head. * * * [S]he had bloodshot eyes and rapid speech and from what I observed inside the cab, it looked like somebody who was under the influence of a [central nervous system] stimulant."

A short time later, Officer Dalby arrived at the scene and assumed responsibility for the investigation. Dalby testified that defendant's eyelids were "droopy" and that she "appeared very disoriented," but that she denied having had anything to drink. Dalby performed field sobriety tests on defendant. Although defendant passed the series of tests, Dalby observed that she performed the tests "very rapidly," and that speed was part of the tests.

Dalby read defendant her *Miranda* rights, and placed her under arrest for "Driving Under the Influence of

Intoxicants and/or drugs." While defendant was in the back of Dalby's patrol car, Hansen informed defendant that he suspected her of being under the influence of methamphetamine. After an initial denial, "[defendant] was quick, though, to admit she'd taken about four hits of meth from a pipe about an hour earlier."

After the arrest, Dalby transported defendant to the Gresham Police Department, where defendant was to undergo DRE testing. On arrival at the police station, Dalby observed that defendant was still exhibiting signs of intoxication. Dalby then read defendant an implied consent form, and defendant consented to taking a breath test,[1] which was "standard procedure." The test revealed a 0.00 percent BAC. Dalby then turned the investigation over to the drug recognition evaluator.

Defendant was indicted for driving under the influence of a controlled substance (DUII-CS). ORS 813.010(1)(b). Defendant filed a motion to suppress the results of the breath test. Defendant argued that because the officers did not believe that defendant was under the influence of alcohol, the officers lacked probable cause to perform a warrantless search of defendant's breath for the presence of alcohol. Additionally, defendant argued that if the breath test evidence were excluded, then under *State v. Sampson*, 167 Or App 489, 6 P3d 543, *rev den*, 331 Or 361 (2000), the results of the DRE were inadmissable since the state could not prove that it performed all 12 steps of the protocol. The trial court agreed, granting defendant's motion to suppress:

> "And I'm going to agree with [defendant] that there is no authority to conduct a breath test for alcohol when they are—when they have probable cause to arrest only for DUI drugs. And without the breath test, the [DRE] evidence falls.
>
> "* * * * *
>
> "I think it's ridiculous, but I'm led to it by the standard of law of this state that you cannot do a breath test without probable cause that there is alcohol in the system and that

---

[1] The trial court concluded that defendant's consent was involuntary and the state does not challenge that conclusion on appeal.

she is under the influence of it and it's impairing her driving."

The state appeals from that ruling of the trial court.

■ On appeal, the state makes one assignment of error relating to the trial court's grant of defendant's motion to suppress the evidence of defendant's BAC and the trial court's ruling that, without that evidence, the DRE evidence is inadmissible. The state argues that the officers had probable cause to believe that defendant was driving under the influence of intoxicants, which includes both alcohol and controlled substances, and that a breath test would produce evidence of that crime.[2] In response, defendant repeats her arguments that the officers lacked probable cause to conduct a breath test, and that without the evidence of her BAC, the DRE evaluation is inadmissable. We agree with the state that the officers had probable cause because defendant's BAC is relevant evidence in a prosecution for DUII.

■ ■ We begin our analysis with a review of the law regarding warrantless searches generally and breath tests in particular. Article I, section 9, of the Oregon Constitution protects our citizens against unreasonable searches and seizures.[3] A warrantless search and seizure is *per se* unreasonable absent an exception to the warrant requirement. *State v. Snow*, 337 Or 219, 223, 94 P3d 872 (2004). Subjecting a person to a breath test is a search and seizure that requires either a warrant or an exception to the warrant requirement. *State v. Newton*, 291 Or 788, 800-01, 636 P2d 393 (1981), *overruled in part on other grounds by State v. Spencer*, 305 Or 59, 750 P2d 147 (1988). However, warrantless breath tests have been upheld as long as there is both probable cause and exigent circumstances. *Id.* at 801. In *Newton*, the court held that because there was probable cause to believe that the defendant had committed the crime of DUII, and because of

---

[2] The state raises alternative arguments as well, but we need not address those arguments because we agree with the state that the officers had probable cause.

[3] Article I, section 9, of the Oregon Constitution provides, in part:
"No law shall violate the right of the people to be secure in their persons, * * *, and effects against unreasonable search or seizure; and no warrant shall issue but upon probable cause, * * * particularly describing the place to be searched and the person or thing to be seized."

the transitory nature of a person's BAC, a breath test falls under the exigent circumstances exception to the warrant requirement. *Id.* Defendant's arguments concern only the presence of probable cause to conduct the breath test. Our inquiry thus focuses on whether the police had probable cause to conduct the breath test.

■■ "A warrantless search under exigent circumstances is lawful if based on probable cause to believe that evidence of a crime is likely to be discovered." *State v. Chambers*, 147 Or App 626, 630, 938 P2d 793 (1997), *rev den*, 327 Or 82 (1998). Probable cause requires both an objective and subjective component. *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). "An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances." *Id.* Here, it is undisputed that the officers had a subjective belief that was objectively reasonable that defendant violated the DUII statute. However, defendant argues that because the officers' *subjective* belief extended only to controlled substances, the officers lacked a *subjective* belief that defendant was under the influence of alcohol and, therefore, the subsequent search and seizure of defendant's breath for alcohol was unreasonable.

We disagree. The officers had probable cause to search for evidence of the crime of DUII. ORS 813.010 defines the crime of DUII, and provides, in part:

"(1)  A person commits the offense of driving under the influence of intoxicants if the person drives a vehicle while the person:

"(a)  Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person * * *;

"(b)  Is under the influence of intoxicating liquor, a controlled substance or an inhalant; or

"(c)  Is under the influence of any combination of intoxicating liquor, an inhalant and a controlled substance."

ORS 813.010(1) specifically identifies three classes of substances that could cause a driver to be under the influence of an intoxicant and could subject that person to liability

for the crime of DUII. The three substances are intoxicating liquor, a controlled substance, or an inhalant. In *Sampson*, we approved the admissibility of the 12-step DRE protocol to show that a defendant was under the influence of a controlled substance because the purpose of DRE protocol evidence is "to make more probable a fact of consequence—that [the] defendant was under the influence of a controlled substance." 167 Or App at 499.

The first step of the DRE protocol is a determination of a defendant's BAC in order to rule out impairment due to alcohol.[4] 167 Or App at 494. Because a person can be convicted of a DUII only if impaired by alcohol, a controlled substance, or an inhalant, ruling out one or more of those substances makes it more likely that a person's impairment

---

[4] The DRE protocol consists of the following 12 steps:

"1. A blood alcohol content (BAC) analysis is done. If the subject's BAC exceeds 0.08 percent, the DRE protocol ends.

"2. The DRE officer interviews the arresting officer to elicit information about the subject's behavioral and physical symptoms.

"3. The DRE officer conducts a preliminary physical examination: he or she checks the subject's eye for synchronization and pupil size, checks the pulse, and asks general health questions. This step determines whether the subject is impaired by a medical condition.

"4. The DRE officer conducts four standard eye examinations developed to detect intoxication: horizontal gaze nystagmus (HGN), vertical gaze nystagmus (VGN), and lack of convergence (LOC).

"5. The DRE officer conducts four FSTs: the Romeburg balancing test, the walk and turn test, the one leg stand test, and the finger to nose test.

"6. The DRE officer checks the subject's pulse, blood pressure, and body temperature.

"7. The DRE officer measures the subject's pupil size under three light conditions (near total darkness, indirect light, and direct light), and inspects the nose and mouth for signs of drug ingestion.

"8. The DRE officer checks the subject's muscle tone for extreme flaccidity or rigidity.

"9. The DRE officer inspects for injection sites.

"10. The DRE officer conducts a focused interrogation and observation of the subject's behavior.

"11. Considering the results of all the foregoing procedures, the DRE officer develops a formal opinion identifying the drug that the subject took.

"12. The DRE officer obtains a urine sample for toxicological testing. The test is used to corroborate the DRE officer's opinion and to provide a learning tool for the officer."

*Sampson*, 167 Or App at 494-95 (footnotes omitted).

might be due to the substance or substances that the officer suspects. In addition, *if* the suspect's BAC exceeds 0.08 percent, there is no reason to continue the DRE protocol because a 0.08 percent BAC is evidence that the suspect violated ORS 813.010(1)(a).

Thus, a person's BAC test, even if expected to result in a 0.00 percent BAC, provides the officer with evidence that the person was not under the influence of alcohol at the time the person was driving. A logical inference from the absence of alcohol is that, if the person exhibits conduct indicating impairment, then the person is under the influence of either a controlled substance or an inhalant. In this case the officers' subjective and objective belief that defendant was under the influence of a controlled substance was reinforced by the lack of alcohol in defendant's blood. Under these circumstances the officer correctly proceeded to the remaining 11 steps of the DRE.

To recap, defendant was suspected to be under the influence of intoxicants while driving, in violation of ORS 813.010. Because the officers had subjective beliefs that were objectively reasonable that defendant was under the influence of intoxicants, exigent circumstances existed that allowed the officers to conduct a warrantless search of defendant's breath. Once the BAC test established that defendant was not under the influence of alcohol, the officers had probable cause to continue with the DRE protocol because, if the DRE evidence was positive, then that would be evidence that defendant was under the influence of a controlled substance.

Our conclusion is further supported by defendant's argument that, without the breath test evidence, the DRE evaluation is inadmissable. Defendant relies on our decision in *State v. Aman*, 194 Or App 463, 95 P3d 244 (2004), *rev allowed*, 338 Or 488 (2005), in which we held that the absence of the twelfth step, a urine test corroborating the DRE officer's opinion, rendered the DRE evidence inadmissible. Because, as defendant argues, every step of the DRE is crucial in establishing its foundation as scientific evidence, then it follows that each and every step is evidence of the crime of DUII, including the breath test.

Defendant also argues that a search and seizure of her breath for the purpose of ruling out alcohol as a cause of impairment is an unlawful search for exculpatory evidence. Defendant relies on our decision in *State v. Scheer*, 99 Or App 80, 781 P2d 859 (1989), in which we held that an officer's subsequent search of the defendant's vehicle in order to find the defendant's driver's license was unlawful in an arrest for failure to produce a license. Because the search would not produce evidence of the crime, but rather, the search would only produce exculpatory evidence, we concluded the search to be impermissible. *Id.* at 83.

In contrast to the situation in *Scheer*, here, the breath test evidence showing a 0.00 percent BAC does not exculpate defendant of the crime of DUII. Rather, the breath test evidence makes it more likely that defendant's impairment was due to controlled substances, the reason why a breath test, as defendant agrees, is an integral part of the DRE protocol. In sum, we conclude that, because a breath test is relevant evidence of the crime of DUII, and because the officers had probable cause to believe that defendant had committed the crime of DUII, subjecting defendant to a breath test was not an unlawful search and seizure.

Reversed and remanded.