Argued and submitted May 27, reversed and remanded June 25, 2014

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## JOHN MICHAEL GEREN,
*Defendant-Respondent.*

Hood River County Circuit Court
110153CT; A151530

329 P3d 785

Joanna L. Jenkins, Senior Assistant Attorney General, argued the cause for appellant. With her on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

David Sherbo-Huggins, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Mooney, Judge pro tempore.

SERCOMBE, P. J.

## SERCOMBE, P. J.

The state appeals an order suppressing evidence resulting from the warrantless testing of defendant's urine. ORS 138.060(1)(c). The trial court, relying on our decisions in *State v. Machuca*, 231 Or App 232, 218 P3d 145 (2009) (*Machuca I*), *rev'd on other grounds*, 347 Or 644, 227 P3d 729 (2010), and *State v. Moore*, 247 Or App 39, 269 P3d 72 (2011) (*Moore I*), *rev'd*, 354 Or 493, 318 P3d 1133 (2013) (*Moore II*), *adh'd to as modified on recons*, 354 Or 835, 322 P3d 486 (2014), concluded that defendant's consent to that testing was involuntary because it was obtained after he had received statutory implied consent warnings about the consequences he would suffer if he refused consent.[1] On appeal, the state contends that, in light of the Supreme Court's decision in *Moore II*, defendant's consent was voluntary and the trial court erred in suppressing the results of the urine test. We agree with the state and, accordingly, reverse and remand.

Defendant was pulled over for speeding and, ultimately, arrested for driving under the influence of intoxicants after he performed poorly on a number of field sobriety tests. At the jail, the arresting officer read defendant "the DMV Implied Consent Rights and Consequences Section 1 Paragraphs (a) through (i) out loud and verbatim," after which defendant agreed to take a breath test. That test indicated a blood alcohol content of 0.0 percent. The officer then "read [defendant] the DMV Implied Consent Rights and Consequences Section 2 Paragraphs (a) through (c) out loud and verbatim" and, thereafter, asked defendant if he would consent to a urine test.[2] Defendant agreed to provide

---

[1] *See* ORS 813.100(1) (requiring that, "[b]efore [a] test is administered the person requested to take the test shall be informed of consequences and rights as described under ORS 813.130"); ORS 813.130 (setting out "requirements for information about rights and consequences" of which a person must be advised); ORS 813.131(1) (establishing circumstances in which a person is deemed to have consented to a urine test); ORS 813.132 (setting out consequences of refusing to take a urine test and information that must be disclosed before urine test is administered).

[2] The information about rights and consequences about which the officer was required to advise defendant under ORS 813.130 and ORS 813.132 included, among other things, that, if he refused to submit to the testing, (1) "evidence of the refusal * * * may be offered" against him; (2) his license would be suspended and the "suspension will be substantially longer if [he] refuses a test"; (3) he

a urine sample. The urine tested positive for Ambien, Paxil, Trazodone, and Hydroxyzine.

As noted, relying on *Moore I*, defendant moved to suppress the results of the urine test contending that, in light of the fact that "the officer read [defendant] paragraphs A though I in section 1 of the Motorist Implied Consent Rights and also read him (a) through (c) in section 2," defendant's consent to the urine test was involuntary under Article I, section 9, of the Oregon Constitution.[3] In that case, we adhered to and readopted reasoning originally set forth in *Machuca I*, that, under Article I, section 9, consent to blood and urine testing obtained after a defendant has received the statutory implied consent warnings is involuntary. 247 Or App at 46. The trial court agreed with defendant, concluding that "this case is indistinguishable from *Machuca I* and *Moore [I]*." Although the trial court noted that, generally, "informing a citizen of the consequences which will lawfully flow from a refusal to consent does not render the consent involuntary," it further observed that "it is absolutely clear that *Machuca I* and *Moore [I]* are controlling precedent on this issue unless and until the Oregon Supreme Court weighs in on the matter." Accordingly, the court ruled that defendant's consent to the urine test was not voluntary.

Thereafter, during the pendency of this appeal, the Supreme Court issued its decision in *Moore II*. In that case, the court concluded that an officer's reading of the statutory

---

would be "subject to a fine of at least $500 but no more than $1,000"; and (4) a license suspension for refusal to take a urine test "will be consecutive to any other suspension under the Motorist Implied Consent Law." Despite the trial court's paraphrasing of the advice of rights and consequences in its memorandum opinion—that defendant was informed that "his refusal would be admissible against him in court"—all of the evidence in the record is that the officer read defendant the DMV Implied Consent Rights and Consequences form verbatim and, thereby, informed defendant that evidence of the refusal to take the test "*may* *** be offered against" him, as required pursuant to ORS 813.130 and ORS 813.132. (Emphasis added.) To the extent that the trial court found otherwise, such a finding would not be supported by evidence in the record. *See Moore II*, 354 Or at 505 (in reviewing a trial court's ruling on a motion to suppress, we defer to the court's findings of fact if there is evidence in the record to support them).

[3] Under Article I, section 9, "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure[.]"

rights and consequences of refusing to submit to blood, breath, or urine testing does not render a defendant's consent to such testing involuntary. 354 Or at 503. According to the court, "advising a defendant of the lawful consequences that may flow from his or her decision to engage in a certain behavior ensures that that defendant makes an informed choice whether to engage in that behavior or not." *Id.* at 502-03. Although "accurately advising a defendant of a lawful penalty that could be imposed may well play a role in the defendant's decision to engage in the particular behavior, * * * that does not mean that the defendant's decision was 'involuntary.'" *Id.* at 503.

Furthermore, the court concluded that the fact that the defendant had been warned, as required by statute, that evidence of his refusal to submit to a test "may be offered" against him did not render his consent involuntary. *Id.* at 505. According to the court, "advice that evidence of the refusal * * * '*may* be offered against you' is a true statement, and it advises of a consequence that the constitution does not forbid in at least two situations"—those are, in an administrative hearing on the validity of a suspension for refusing to submit to a test or in a proceeding to contest a traffic violation relating to "the refusal to consent to a chemical test." *Id.* (emphasis in original). Accordingly, the court concluded that the advice of rights and consequences "contained accurate statements of the lawful consequences of refusing to submit to the tests" and did not render the defendant's consent involuntary. *Id.*

As in *Moore II*, here, the officer read defendant the statutorily required information about rights and consequences relating to refusal to submit to the urine test from DMV's implied consent form. Thereafter, defendant consented to the urine test. For the reasons explained in *Moore II*, defendant's consent was not rendered involuntary when the officer read him that form, which "contained accurate statements of the lawful consequences of refusing to submit to the tests." *Id.*; *see also State v. Wieboldt*, 260 Or App 583, 320 P3d 597 (2014) (affirming trial court's denial of a defendant's motion to suppress results of a urine test in light of

*Moore II*). Accordingly, the trial court erred in granting the motion to suppress under Article I, section 9.[4]

Reversed and remanded.

.

---

[4] Defendant also contends that his consent was involuntary under the Fourth Amendment to the United States Constitution and that the court's suppression of the results of the urine test was appropriate under that provision. We observe that defendant's contentions before the trial court focused on Article I, section 9, as interpreted in *Machuca I* and *Moore I*. Although he cited the Fourth Amendment in support of his motion, he does not appear to have developed an independent argument under the federal constitution before the trial court, nor did the trial court's ruling address the Fourth Amendment. In any event, given that, as explained in *Moore II*, the statutory advice of rights and consequences provided to defendant merely accurately informed him of the lawful consequences of refusing to submit to the urine test, we reject without further discussion his contention that his consent was involuntary under the federal constitution.