Argued and submitted December 23, 2014, reversed and remanded
June 17, petition for review denied October 9, 2015 (358 Or 70)

# STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

# ANGELA NAYGIVER LOPEZ-LOPEZ,
*Defendant-Respondent.*

Jackson County Circuit Court
125911MI; A154703

353 P3d 43

Doug M. Petrina, Senior Assistant Attorney General, argued the cause for appellant. With him on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Meredith Allen, Senior Deputy Public Defender, argued the cause for respondent. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

**TOOKEY, J.**

Pursuant to ORS 138.060(1)(c), the state appeals a pretrial order granting defendant's motion to suppress evidence resulting from the warrantless testing of her breath. Because we conclude that defendant voluntarily consented to the testing of her breath, we reverse and remand.

We are bound by the trial court's findings of fact as long as there is constitutionally sufficient evidence to support them. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). In the absence of express factual findings, we presume that the trial court decided the disputed facts in keeping with its ultimate conclusion. *Id.* On appeal, "[o]ur function is to decide whether the trial court applied legal principles correctly to those facts." *Id.* We state the facts consistently with those standards.

At 1:23 a.m., Officer Rosas observed that a vehicle driven by defendant was speeding, swerving in its lane, and crossing into the bicycle lane. He activated his overhead emergency lights and pulled defendant over for a "routine traffic stop." The vehicle was occupied by multiple people, so Rosas requested back up. Officers Vanderlip and Wenzel soon arrived as backup.

After Rosas approached the vehicle and observed defendant, Rosas noticed that defendant had bloodshot and watery eyes and that there was an odor of alcohol coming from the car, and he suspected that defendant was under the influence of intoxicants. Rosas asked defendant how much she had had to drink, and defendant told Rosas that she had had two beers. At that point, Rosas believed that he had probable cause to investigate defendant for driving under the influence of intoxicants (DUII), and he asked her if she would consent to perform field sobriety tests. Defendant then consented to perform field sobriety tests, performed the tests on a nearby sidewalk, and failed.

At 1:38 a.m., Rosas informed defendant that she was under arrest, read her *Miranda* warnings, and placed her in handcuffs. Rosas then escorted her to the back of his patrol car, helped her into the back seat, and drove her to the police department. Vanderlip and Wenzel "stayed behind

to deal with the other occupants in the car for a short time, because they were very upset about [defendant] being taken into custody."

While Rosas was transporting defendant to the police department, defendant "slipped out of the handcuffs and started to use them to strike the plexiglass between the front and rear seats of the police car." Rosas and defendant arrived at the police department at 1:45 a.m., and another officer "helped Rosas remove defendant from the vehicle and re-cuff her."

At 1:52 a.m., Rosas began a 15-minute observation period required before a breath test. Rosas, who had not attempted to obtain a search warrant, then read defendant "the back page of the Implied Consent Report[,]" which sets forth the rights and consequences described in ORS 813.130. After the reading of the implied consent warnings, defendant consented to take the breath test.

At 2:10 a.m., defendant blew into the Intoxilyzer machine but gave an insufficient breath sample. At 2:19 a.m., a second Intoxilyzer sequence was begun, but it was aborted when defendant reported that she needed to use the restroom. Rosas allowed defendant to use the restroom. At 2:48 a.m., defendant blew a breath sample indicating that her blood alcohol concentration was 0.14 percent.

Before setting forth the parties' arguments and the trial court's ruling in this case, we pause to provide, as background, a brief overview of the relevant law. ORS 813.100(1) provides that "[a]ny person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent, subject to the implied consent law, to a chemical test of the person's breath" or, under certain circumstances, blood, upon arrest for driving under the influence of intoxicants. "Before the test is administered the person requested to take the test shall be informed of consequences and rights as described under ORS 813.130." *Id.* The information about rights and consequences described in ORS 813.130 includes information that, if the person refuses or fails a test, evidence of the refusal or failure "may * * * be offered against the person,"

ORS 813.130(2)(a); that, if the person refuses or fails a test, "the person's driving privileges will be suspended," ORS 813.130(2)(c); and that, if the person refuses a breath test, "the person is subject to a fine of at least $500 and not more than $1000[,]" ORS 813.130(2)(f).

At the time of the suppression hearing in this case, we had concluded, under Article I, section 9, of the Oregon Constitution,[1] that "a defendant's consent [to blood and urine testing] that is obtained after the defendant has received statutory implied consent warnings is involuntary." *State v. Moore*, 247 Or App 39, 41, 269 P3d 72 (2011) (*Moore I*), *rev'd*, 354 Or 493, 318 P3d 1133 (2013) (*Moore II*), *adh'd to as modified on recons*, 354 Or 835, 322 P3d 486 (2014); *see also State v. Machuca*, 231 Or App 232, 240, 218 P3d 145 (2009) (*Machuca I*), *rev'd on other grounds*, 347 Or 644, 227 P3d 729 (2010) (*Machuca II*) (the defendant's consent to a blood test was involuntary because it "was procured through a threat of economic harm and loss of privileges"—"obtained only after defendant was given the warnings required by ORS 813.130(2) about the consequences of a refusal to allow a blood test"). In addition, less than two months before the suppression hearing in this case, a majority of the United States Supreme Court held, under the Fourth Amendment to the United States Constitution,[2] "that in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Missouri v. McNeely*, 569 US ___, 133 S Ct 1552, 1568, 185 L Ed 2d 696 (2013).

Before trial, defendant moved to suppress the breath test evidence, arguing that the warrantless testing of her breath violated her rights under Article I, section 9, and the Fourth Amendment. First, relying on *Moore I*, defendant

---

[1] Article I, section 9, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

[2] The Fourth Amendment provides, in part:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

argued that her consent was invalid because she consented to the breath test only after Rosas informed her, pursuant to Oregon's implied consent law, of the consequences if she did not consent to the breath test. Second, relying on *McNeely*, she argued that there was no exigency to justify the taking of her breath sample without a warrant.

In response, the state submitted a lengthy memorandum to the trial court arguing against suppression. The state first noted that *Moore I* was pending review in the Oregon Supreme Court and argued that our holding in *Moore I*—that "a defendant's consent [to blood and urine testing] that is obtained after the defendant has received statutory implied consent warnings is involuntary"—was wrong. 247 Or App at 41. The state also argued that *McNeely* did "not govern the outcome of the Fourth Amendment analysis in this case[,]" in part because *McNeely* involved a nonconsensual, invasive, blood draw, as opposed to a breath test, and in part because "*McNeely* did not purport to analyze any other exception to the warrant requirement, such as consent[.]" The state alternatively argued that, even if *McNeely* did apply, this case involved an exigency to justify the warrantless search. Finally, the state argued for the applicability of two additional warrant exceptions: search incident to arrest and reasonableness (special needs).

In a letter opinion, the trial court stated that it was "bound by" this court's consent analysis in *Moore I* and *Machuca I*, and it declined the state's invitation to revisit our reasoning in those cases. The trial court also stated that the state had failed to prove an exigency as required by the Fourth Amendment. Then, based on the "United States Supreme Court decision in *McNeely*, and its overlay on Oregon Court of Appeals jurisprudence on voluntary versus involuntary consent under Article 1, Section 9," the trial court granted defendant's motion to suppress.

After the trial court granted defendant's motion to suppress, the Oregon Supreme Court reversed our holding in *Moore I*, concluding that an officer "did not unconstitutionally coerce defendant's consent to the test of his blood

and urine by reading him the statutory implied consent warnings." *Moore II*, 354 Or at 495.[3]

On appeal, the state contends that the trial court erred in granting defendant's motion to suppress, arguing that the evidence was admissible under both Article I, section 9, and the Fourth Amendment, based on four independent exceptions to the warrant requirement: consent, exigency, search incident to arrest, and reasonableness. We write only to address the consent exception and, as we explain below, conclude that the warrantless search of defendant's breath was justified under the consent exception to the warrant requirement of the Oregon and the United States constitutions.[4]

We consider questions of state law first. *See State v. Kennedy*, 295 Or 260, 262-63, 666 P2d 1316 (1983) (court considers and disposes of questions of state law before reaching federal law claims). Under Article I, section 9, "[s]ubjecting a person to a breath test is a search and seizure that requires either a warrant or an exception to the warrant requirement." *State v. Burshia*, 201 Or App 678, 682, 120 P3d 487 (2005). "Consent is an exception to the warrant requirement." *State v. Lowe*, 144 Or App 313, 317, 926 P2d 332 (1996). "In assessing voluntariness, we examine the totality of the circumstances to determine whether a defendant's consent was the product of the defendant's free will or was the result of express or implied coercion." *State v.*

---

[3] In *Moore II*, the Oregon Supreme Court noted that the United States Supreme Court, in *McNeely*, "rejected the argument that, under the Fourth Amendment to the United States Constitution, the natural metabolism of alcohol in the bloodstream presents a *per se* exigency that always justifies an exception to the warrant requirement" and concluded that "exigency in the context of an arrest for DUII must be determined case by case based on the totality of the circumstances." 354 Or at 497 n 5. The Oregon Supreme Court also stated that the United States Supreme Court's "rejection of a *per se* exigency rule" in *McNeely* was "not inconsistent with" the statement made by the Oregon Supreme Court in *Machuca II*, that, "while exigent circumstances are 'ordinarily' present in a case involving alcohol, that may not be true, depending on the facts of a particular case." *Id.; see also id.* at 507-08 (Kistler, J., concurring in part and concurring in the judgment) (agreeing with the majority that the holding in *McNeely* "is quite narrow").

[4] We note that defendant contends that the state failed to preserve its Fourth Amendment argument relating to consent. We conclude that the state's contentions under the Fourth Amendment were sufficiently preserved and reject defendant's argument to the contrary.

*Larson*, 141 Or App 186, 197, 917 P2d 519 (1996). Relevant factors to be considered in determining the voluntariness of consent include whether physical force was used or threatened; whether weapons were displayed; whether the consent was obtained in public; whether the person who gave consent was the subject of an investigation; the number of officers present; whether the atmosphere surrounding the consent was antagonistic or oppressive; and whether drug use impaired the defendant's capacity to make a knowing, voluntary, and intelligent choice. *Id.* at 198. "When the state relies on consent to support a search, it must prove by a preponderance of the evidence that the consent was voluntary." *Id.* at 197.

The state argues that, "the record demonstrates that [defendant's consent] was the product of her own free will rather than unlawful coercion" and that, "in light of *Moore II*, defendant's consent was voluntary under Article I, section 9[.]"

Defendant acknowledges that our holding in *Moore I* has been reversed, but nevertheless argues that her consent was obtained through coercion because she had been (1) "subjected to roadside field sobriety tests"; (2) "forcibly removed from the patrol car at the police station as a result of having removed her handcuffs"; and (3) "subjected to implied consent warnings regarding the consequences of refusal[.]"

We are not persuaded that the circumstances identified by defendant are coercive. First, although defendant participated in roadside field sobriety tests, she did not argue to the trial court, and does not argue here, that her participation in those tests was involuntary, and there is no evidence to suggest that it was involuntary. Second, there is no evidence that defendant's removal from the patrol car at the police department affected her decision to consent to the breath test. Third, defendant's argument that she was coerced by the reading of the implied consent warnings is precluded by *Moore II*, in which the Oregon Supreme Court concluded that the reading of the implied consent warnings is not inherently coercive. 354 Or at 506 (stating that "advice that evidence of the [test] refusal or failure 'may be offered against you' is a true statement" and is "not coercive"

(emphasis omitted)); *see also State v. Geren*, 263 Or App 716, 719, 329 P3d 785 (2014) (reviewing the principles set forth in *Moore II* and concluding that the defendant's consent to a urine test was not rendered involuntary when an officer read the defendant the statutorily required information about rights and consequences relating to refusal to submit to the urine test).

When we look to the above-noted factors for guidance to determine the voluntariness of defendant's consent, *Larson*, 141 Or App at 198, we conclude that, under the totality of the circumstances, defendant's consent was the product of defendant's free will and was not the result of express or implied coercion. Although defendant was under a DUII investigation and her consent to the breath test was obtained at the police department, there is no evidence that physical force was used or threatened, that weapons were displayed, or that the atmosphere surrounding defendant's consent was antagonistic or oppressive. Ultimately, the record demonstrates that defendant was involved in a "routine traffic stop" and a DUII investigation, during which defendant, after being read the implied consent warnings, voluntarily agreed to take a breath test. Under the circumstances presented in this case, we conclude that Article I, section 9, does not require suppression of the breath test evidence.

Under the Fourth Amendment, subjecting a person to a breath test is also a search that requires a warrant or that must fall within an exception to the warrant requirement. *Skinner v. Railway Labor Executives' Assn*, 489 US 602, 616-17, 109 S Ct 1402, 103 L Ed 2d 639 (1989). Voluntary consent is one such exception, and both parties agree that the correct standard for voluntary consent is the one articulated in *Schneckloth v. Bustamonte*, 412 US 218, 93 S Ct 2041, 36 L Ed 2d 854 (1973). To be voluntary under that standard, a person's consent must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Id.* at 228. "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Id.* at 227.

For essentially the same reasons that we have already articulated in connection with our consent analysis under Article I, section 9, and based on the totality of all the circumstances, we conclude, under the Fourth Amendment, that defendant's consent was voluntary and was not a product of duress or coercion, express or implied. *See Geren*, 263 Or App at 720 n 4 (rejecting the defendant's contention that his consent was involuntary under the Fourth Amendment "given that, as explained in *Moore II*, the statutory advice of rights and consequences provided to defendant merely accurately informed him of the lawful consequences of refusing to submit to the urine test"). Accordingly, we conclude that the Fourth Amendment does not require suppression of the breath test evidence.

Reversed and remanded.